Bill CLINTON, Governor of Arkansas; State Board of
Correction, Ray Hobbs, Warden, Wrightsville Unit, State
Department of Correction, and State of Arkansas *v.* Steven
Earle BONDS

91-44                                               816 S.W.2d 169

Supreme Court of Arkansas
Opinion delivered September 30, 1991

*Winston Bryant*, Att'y Gen., by: *Leslie M. Powell*, Senior Asst, Att'y Gen., for appellants.

*Jacoway, Sherman & Pence*, by: *William F. Sherman*, for appellee.

STEELE HAYS, Justice. The appellee, Steven Earl Bonds, is an inmate currently confined in the Arkansas State Penitentiary serving a thirty-year sentence for a conviction of burglary in 1985. Bonds worked on the Capitol grounds from August 1988 to February 1989. Bonds filed a grievance with the Arkansas Department of Correction, Wrightsville Unit, seeking good-time benefits under Ark. Code Ann. § 12-30-408 (1987) (Act 440 of 1983) for the work done at the Capitol. He received no response. After Bonds wrote to the Governor, George Brewer, Classification Administrator for the Department of Correction, responded to Bond's letter and informed him that Act 440 was repealed by Act 814 of 1983 and, therefore, inmates are not eligible to earn good-time under the provisions of Ark. Code Ann. § 12-30-408.

Thereafter Bonds filed a pro se petition in the Pulaski Circuit Court challenging the constitutionality of Act 709 of 1989 which amended the Arkansas Administrative Procedures Act by excluding prison inmates from judicial review of administrative adjudications. The respondents (now the appellants) moved to dismiss alleging that Bonds had no standing. The motion was denied. Bonds subsequently filed an amended petition seeking

declaratory relief and reasserting that Act 709 was unconstitutional.

After a hearing, the Circuit Court found that the only issue addressed was the validity of Act 709 and held that Act 709 was unconstitutional. Appellants raise two grounds for reversal of the circuit court's judgment: Bonds did not have standing to challenge Act 709 and the trial court erred in holding the act unconstitutional. We hold that the appellant had standing to challenge the constitutionality of Act 709; and the trial court did not err in finding the Act unconstitutional.

## I

## STANDING

Appellants state that their primary position has always been that while Bonds has standing to seek declaratory judgment of his rights regarding "good-time" under Act 440, he does not have standing to challenge Act 709, because there has been no administrative adjudication in this case.

But whether or not there was an administrative adjudication is not relevant where the sole issue is the constitutionality of Act 709 of 1989. Bonds sought declaratory relief pursuant to our Declaratory Judgment Act, Ark. Code Ann. §§ 16-111-101 through 16-111-111 (1987). Section 16-111-104 of the Act provides:

> Any person . . . whose rights, status, or other legal relations are affected by a statute . . . may have determined any question of construction or validity arising under the . . . statute . . . and obtain a declaration of rights, status, or other legal relations thereunder.

See also Lawson v. City of Mammoth Spring, 287 Ark. 12, 696 S.W.2d 712 (1985). (A defendant who had been convicted in a municipal court had standing to seek declaratory relief, to challenge the constitutionality of legislation creating the court, as a person whose rights were affected by the legislation).

Bonds argues that he had no other avenue through which he could obtain judicial review and Act 709 of 1989 specifically excludes such review for inmates. Bonds' rights are directly affected by Act 709, thus, he has standing to challenge it.

## II

## Act 709 of 1989

Act 709, codified at Ark. Stat. Ann. § 25-15-212 (Supp. 1991), and entitled, *Administrative Adjudication- Judicial Review*, provides in part:

> (a) In cases of adjudication, any person, *except an inmate under sentence to the custody of the Department of Correction*, who considers himself injured in his person, business, or property by final agency action shall be entitled to judicial review of the action under this subchapter. Nothing in this section shall be construed to limit other means of review provided by law. (Emphasis added).

Bonds contends that Act 709's preclusion of inmates from judicial review of administrative action in state courts constitutes an unconstitutional denial of due process.

We review challenges to the constitutionality of statutes under the principle that statutes are presumed to be constitutional. *First Nat'l Bank* v. *Arkansas State Bank Comm'r*, 301 Ark. 1, 781 S.W.2d 744 (1989). Additionally, the burden of proving a statute unconstitutional is upon the party challenging it. *Urrey Ceramic Tile Co.* v. *Mosley*, 304 Ark. 711, 805 S.W.2d 54 (1991). On appeal, if it is possible to construe a statute as to meet the test of constitutionality, we will do so. *Id.*

We have recognized that administrative agencies, due to their specialization, experience, and greater flexibility of procedure, are better equipped than courts to analyze legal issues dealing with their agencies. *First Nat'l Bank* v. *Arkansas State Bank Commissioner*, *supra*. This accounts for the limited scope of review of administrative action and the reluctance of a court to substitute its judgment for that of the agency. *Id.*

In particular, the administration of prisons has generally been held to be beyond the province of the courts. *Stevens* v. *State*, 262 Ark. 216, 555 S.W.2d 229 (1977); *Walker* v. *Lockhart*, 713 F.2d 1378 (8th Cir. 1983). An exception to the courts' reticence to entertain prisoner's administrative complaints occurs when the petitioner asserts an infringement upon constitutional rights. *Jackson* v. *Bishop*, 404 F.2d 571 (8th Cir.

1968); *Glick* v. *Sargent*, 696 F.2d 413 (8th Cir. 1983), *Whittington* v. *Norris*, 602 F. Supp. 954 (E.D. Ark. 1984). Likewise, it is a general rule that judicial review of administrative action may be granted or withheld by a legislature in its discretion except when the Constitution requires it. R. Pierce, S. Shapiro and P. Verkuil, *Administrative Law and Process* § 5.2 (1985); 73 A. C.J.S. *Public Administrative Law and Procedures* § 174 (1983); 2 Am. Jur. 2d *Administrative Law* § 565 (1962). H. Hart, Jr., *The Power of Congress to Limit the Jurisdiction of Federal Courts: An Exercise in Dialectic*, 66 Harv. L. Rev. 1362 (1953).

Despite the dicta in case law and the strong suggestions advanced by the United States Supreme Court,[1] as well as scholarly analysis, whether a statute that bars judicial review of a constitutional matter would be per se unconstitutional has not been clearly answered in present law. *See* 5 K. Davis, *Administrative Law Treatise* § 28:3 (2d ed. 1984). Whether there must be judicial review of the decision of an administrative body to revoke good-time credits was raised in *Superintendent, Mass. Corr. Institution* v. *Hill*, 472 U.S. 445 (1985). In *Hill*, the Supreme Court declined to directly answer the question by finding that the Massachusetts Court, in requiring judicial review, relied on state law rather than on federal constitutional principles; however, the *Hill* court did note that "[t]he extent to which legislatures may commit to an administrative body the unreviewable authority to make determinations implicating fundamental rights is a difficult question of constitutional law." *Id.* at 451. The court also remarked, "[w]hether the Constitution requires judicial review is only at issue if such review is otherwise barred. . ." *Id.*

█ In this case, while it was suggested that inmates have other means of judicial review in state courts, nothing was shown justifying that conclusion. Representative Ron Fuller, the sponsor of Act 709, testified about the objective of the legislation and its emergency clause which states ". . . inmates of the Depart-

---

[1] "And except when the Constitution requires it judicial review of administrative action may be granted or withheld as Congress chooses." *Estep* v. *United States*, 327 U.S. 114, 120 (1946); "Constitutional questions obviously are unsuited to resolution in administrative hearing procedures and, therefore, access to courts is essential to the decision of such questions. . ." *California* v. *Sanders*, 430 U.S. 99, 109 (1977); *see also, Johnson* v. *Robinson*, 415 U.S. 361 (1974).

ment of Correction have numerous avenues of administrative due process; that it is not necessary to provide them with judicial review under the Arkansas Administrative Procedure Act. . . ." Fuller could not recall receiving any factual data to support that contention at the time he presented the bill to the judiciary committee. The other testimony relevant to this issue was a characterization of the disciplinary and grievance procedures held within the Department of Correction which were described by the appellant, the assistant to the director for the Department's public and legislative relations, and the Wrightsville Unit's Warden. There was evidence that an inmate has the right to appeal action taken in a disciplinary proceeding, however, that process ends at the level of the Director within the Department. That being so, it does not clearly appear from the record that an inmate in the Department of Correction has a means of judicial review in state courts of constitutional questions arising from administrative decisions.

We are reluctant to find legislative acts unconstitutional, however, we are compelled to affirm the trial court's decision to insure that due process is afforded under the Arkansas and United States Constitutions. In doing so, we emphasize that Act 709 unconstitutionally deprives inmates of review of *constitutional* questions because judicial review of all other administrative questions may be granted, or withheld, according to the Legislature's discretion.

Affirmed.