Mr. Max Mobley, Secretary Sex Offenders Assessment Committee P.O. Box 6209 Pine Bluff, AR 71611
Dear Mr. Mobley:
You have presented the following question for my opinion:
 Does the Sex Offenders Assessment Committee's proposed alternative procedure for determining who is a sexually violent predator violate the 8th Amendment of the U.S. Constitution or any federal or state statute?
You have attached a copy of your proposed changes to the statute that governs the determination of whether an individual should be classified as a sexually violent predator.
RESPONSE
It is my opinion, as discussed below, that the Committee's proposed changes do not violate the 8th Amendment of the U.S. Constitution, Article 2, § 9 of the Arkansas Constitution, or any state or federal statute. However, as also discussed below, I find the proposed amendment to be problematic under the constitutional principles of due process and separations of powers.
Discussion
In order to explain my conclusion, it will be necessary for me to discuss the operation of the current "Sex Offender Registration Act of 1997 (A.C.A. § 12-12-901 et seq.), as well as the proposed amendment to the act. The current version of the Act requires that the names of certain offenders be maintained on a registry that is made available to all criminal justice agencies, to some government agencies, and to certain segments of the public when such disclosures are "necessary for public protection." See A.C.A. § 12-12-913. Offenders who are required to register must comply with a series of requirements. Among these are requirements that the offender notify the authorities of changes in residence, give a DNA sample, and submit to assessment for purposes of determining the risk posed by his release into the community. A.C.A. §§12-12-906, -1303. Some offenders are permitted to apply to have their names removed from the registry after a specified length of time. However, lifetime compliance with the registration requirements is mandatory for other offenders, including those who have been determined by the court to be "sexually violent predator[s]." A.C.A. §12-12-919(a).
The Act sets forth a procedure by which offenders are classified as "sexually violent predators." Under the currently-applicable procedure, as set forth in A.C.A. § 12-12-918, the prosecutor must state on the face of an information that he is seeking a determination that the defendant is a sexually violent predator. Upon an adjudication of guilt, the court enters an order directing that an examiner qualified by the Sex Offender Assessment Committee issue a report to the sentencing court recommending whether the defendant should be classified as a sexually violent predator. In order for the examiner to prepare the report, the defendant is sent for evaluation at a facility designated by the Department of Correction. After receiving the report, the court makes a determination as to whether to classify the defendant as a sexually violent predator. A.C.A. § 12-12-918.
The Sex Offenders Assessment Committee has now recommended a change in the procedure by which offenders are classified as "sexually violent predators." The proposed change would eliminate all of the current language of A.C.A. § 12-12-918, and would re-write the statute to state in full as follows:
 Examiners qualified by the Sex Offender Assessment Committee shall include in the assessment of any offender convicted after the effective date of the Act, of an Aggravated Sex Offense, as defined in § 12-12-901, a review as to whether the frequency, repetition over time, severity of trauma to the victim, or established pattern of predatory behaviors suggests that the individual suffers from a mental abnormality or personality disorder that makes the person likely to engage in future predatory sexually violent offenses. If this is suggested, a Licensed Psychologist or Psychiatrist shall conduct further assessment to determine the presence of [sic] absence of such a mental abnormality or personality disorder.
 The report of that assessment shall be presented to the Sex Offender Assessment Committee, which shall make that determination according to protocols established by that committee and published in the Guidelines.
 The Sex Offender Assessment Committee will notify the sentencing court of its decision.
 Offenders determined by the Sex Offender Assessment Committee to present Level 4 risk will have the same right to an administrative review as other sex offenders, except that the reviewer will not participate in the original determination, and the findings of the reviewer will be returned to the Sex Offender Assessment Committee which will make the final decision.
Sex Offender Assessment Committee's proposed amendment to A.C.A. § 12-12-918.
The question you have presented relates to the above-quoted proposed amendment to A.C.A. § 12-12-918.
8th Amendment
It is my opinion that this proposed amendment to A.C.A. § 12-12-918 does not violate the 8th Amendment to the U.S. Constitution, or Article 2, § 9 of the Arkansas Constitution. Both of these constitutional provisions prohibit "cruel and unusual punishment." Although the Arkansas appellate courts have not addressed the issue of whether the sex offender registration requirements violate constitutional prohibitions against cruel and unusual punishment, the courts of various other jurisdictions have done so. Most of these courts have held that sex offender registration requirements do not violate the constitutional prohibitions of cruel and unusual punishment. See, e.g., Cutsall v. Sundquist,193 F.3d 466 (6th Cir. 1999); Lannie v. Engler, 994 F. Supp. 849 (E.D. Mich. 1998); McDonald v. Marin, 1998 W.L. 230988 (W.D. Cal. 1998); Roev. Farwell, 999 F. Supp. 174 (D. Mass. 1998); Alan A. v. Verniero,970 F. Supp. 1153 (D.N.J. 1997); Meadows v. Bd. of Parole, 47 P.3d 506
(Or.App. 2002); In re Adrian R., 127 Cal. Rptr.2d 211 (Cal.App. 6 Dist. 2002); Ex parte Robinson, 80 S.W.3d 709 (Tex.App. Houston [1 Dist.] 2002); In re Alva, 107 Cal. Rptr 2d 562 (2001); People v. Malchow,714 N.E.2d 583 (Ill.App. 2 Dist. 1999); People v. Adams, 581 N.E.2d 637
(Ill. 1991). But see State v. Scott, 947 P.2d 466 (1997). Most of these decisions rejecting 8th Amendment challenges have turned on the fact that only criminal matters can implicate the 8th Amendment, and the registration (or similar) requirement in question in those cases were found to be civil, rather than criminal in nature. It is my opinion that if the Arkansas Supreme Court were faced with the question, it would find Arkansas' sex offender registration requirements to be civil rather than criminal in nature, and that it would hold that these requirements, including the proposed amendment to A.C.A. § 12-12-918, do not violate the constitutional prohibitions against cruel and unusual punishment.[1]
However, the proposed amendment to A.C.A. § 12-12-918 does, in my opinion, raise certain constitutional concerns. More specifically, the proposed amendment could be deemed to violate the constitutional principles of due process and separation of powers. My concern arises out of the amendment's provision concerning "administrative review." Again, this portion of the amendment states:
 Offenders determined by the Sex Offender Assessment Committee to present Level 4 risk will have the same right to an administrative review as other sex offenders, except that the reviewer will not participate in the original determination, and the findings of the reviewer will be returned to the Sex Offender Assessment Committee which will make the final decision.
The current administrative review process that is available to sex offenders is set forth in the regulations that have been promulgated by the Sex Offender Assessment Committee. Under that process, the parties who are entitled to request administrative review are the court, the prosecutor, the chief law enforcement officer having jurisdiction, the Department of Community Correction, the Post Prison Transfer Board, and the offender (but only under certain conditions). The offender can request administrative review only on the following bases:
 1. The offender has, or can direct Sex Offender Screening and Risk Assessment (SOSRA) to, documents that were unavailable to SOSRA at the time of assessment and are related to the actuarial method used in the determination of level of risk. Unsupported allegations made by the offender will not be considered.
 2. The offender alleges that the regulations listed herein were not followed or followed in a manner inconsistent with the spirit of the Sex Offender Registration Act. The offender must show probable error, prejudice or negligence committed by an individual or individuals involved in the risk assessment.
Sex Offender Assessment Committee's Guidelines and Procedures forImplementing Risk Assessment and Community Notification Regarding SexOffenders.
The Committee's regulations also state:
 Requests for an administrative review based on a dislike of the level of risk assigned to the offender, the unfairness of the system, or legal questions related to the original adjudication and sentencing will not be considered. The administrative review is based on document and record review only, the offender has no right to appear or call witnesses.
 The Secretary of the Sex Offender Assessment Committee will conduct reviews. The offender will be notified of the results of the review, except in the case of random quality improvement reviews. Copies of the Secretary's response will be sent to the offender, the chief law enforcement officer of the city and/or county in which the offender resides, ACIC, and the Sex Offender Assessment Committee. Any member of the Sex Offender Assessment Committee may ask to see source documents or question the administrative reviewer regarding the reasoning behind the recommendation.
The decision of the administrative reviewer will be final.
Id.
As indicated previously, the proposed amendment to A.C.A. § 12-12-918
provides that the above-described administrative review process will be available to offenders who are assessed as "sexually violent predators," with the exception that the reviewer will not participate in the original determination of the offender's status, and the findings of the reviewer will be returned to the Sex Offender Assessment Committee, which will make the final decision.
It is my opinion that because the proposed amendment removes from the court the final decision concerning an offender's status, it could be deemed to have the effect of depriving the offender of liberty without due process of law, thus violating the 14th Amendment to the U.S. Constitution and Article 2, § 8 of the Arkansas Constitution. In addition, the removal of review by the judiciary, in my opinion, could be deemed to violate the constitutional principle of separation of powers, which is established by Article 4, § 2 of the Arkansas Constitution.
Due Process
It is my opinion that the constitutional principle of due process, arising out of the 14th Amendment to the U.S. Constitution, and Article2, § 8 of the Arkansas Constitution, requires that offenders be given an opportunity for judicial review of any constitutional claims arising out of decisions by the Sex Offender Assessment Committee concerning the offenders' status as sexually violent predators.
A similar due process issue arose in Clinton v. Bonds, 306 Ark. 554,816 S.W.2d 169 (1991). In that case, an inmate who had been denied good time benefits by the Department of Correction challenged the constitutionality of Act 709 of 1989, which amended the Administrative Procedure Act to preclude inmates from seeking judicial review of administrative adjudications. The inmate argued that the preclusion of inmates from seeking judicial review constituted an unconstitutional denial of due process. The circuit court agreed, holding Act 709 to be unconstitutional, and the Arkansas Supreme Court affirmed that holding. The supreme court noted that a right to judicial review ofnon-constitutional issues can permissibly be withheld, but concluded that both the U.S. and Arkansas constitutions require judicial review of constitutional issues. The court stated:
 [W]e are compelled to affirm the trial court's decision to insure that due process is afforded under the Arkansas and United States Constitutions. In doing so, we emphasize that Act 709 unconstitutionally deprives inmates of review of constitutional questions because judicial review of all other administrative questions may be granted, or withheld, according to the Legislature's discretion.
Clinton v. Bonds, 306 Ark. at 559.
The court also quoted the following from the United States Supreme Court:
 "And except when the Constitution requires it judicial review of administrative action may be granted or withheld as Congress chooses." Estep v. United States, 327 U.S. 114, 120 (1946); "Constitutional questions obviously are unsuited to resolution in administrative hearing procedures and, therefore, access to courts is essential to the decision of such questions . . ." California v. Sanders, 430 U.S. 99, 109 (1977); See also, Johnson v. Robinson, 415 U.S. 361 (1974).
Clinton v. Bonds, 306 Ark. at 559, note 1.
Because the proposed amendment to A.C.A. § 12-12-918 removes the right of access to the judiciary and leaves the final decision concerning an offender's status as a sexually violent predator in the discretion of the Sex Offender Assessment Committee rather than a court, offenders would be unable to obtain judicial review of a constitutional claim arising out of the Committee's determination. This shortcoming of the amendment, in and of itself, is sufficient to render it questionable under the principle of due process.
In addition, I note a further possible due process concern: the result of the Committee's determination could be a lifetime restriction of certain of the offender's liberties. Although it is my understanding that the Committee has taken the position that the proposed amendment does not implicate any liberty interest or otherwise trigger due process concern, it is my opinion that it is currently unclear whether a lifetime restriction of this nature implicates a constitutionally protectable liberty interest. The U.S. Supreme Court has not decided this issue, and the federal courts of appeal have reached conflicting conclusions on it.See, e.g., Bruggeman v. Taft, 27 Fed. Appx. 456 (6th Cir. 2001) (no protectable liberty interest); Cutsall, supra (no protectable liberty interest); Paul P. v. Verniero (170 F.3d 396 (3d Cir. 1999) (recognizing protectable liberty interest); Doe v. Dept. of Public Safety, 271 F.3d 38
(2d Cir. 2001) (recognizing protectable liberty interest); Chambers v.Colorado Dept. of Correction, 205 F.3d 1237 (10th Cir. 2000) (recognizing protectable liberty interest); Kirby v. Siegelman,195 F.3d 1285 (11th Cir. 1999) (recognizing protectable liberty interest);Neal v. Shimoda, 131 F.3d 818 (9th Cir. 1997) (recognizing protectable liberty interest); E.B. v. Verniero, 119 F.3d 1077
(3d Cir. 1997) (recognizing protectable liberty interest). It should be noted that the due process claims asserted in these cited cases varied widely, as did their fact situations. Accordingly, the conclusions reached therein may apply only to the specific facts of those cases, and the courts may reach different conclusions when addressing different due process claims and different facts. In any event, as reflected by the divergence in these decisions, it is unclear whether the lifetime registration requirement for "sexually violent predators" implicates a constitutionally protectable liberty interest.
Therefore, because the registration requirement could possibly be deemed to implicate such a protectable liberty interest,[2] it would be advisable to provide offenders with the opportunity for judicial review of the determination of their status as sexually violent predators, so as to avoid a due process challenge.
Because the proposed amendment does not, in its current form, provide for review by the judiciary, I must conclude on the basis of Clinton v.Bonds, supra, and the other precedents cited above, that the proposed amendment could be deemed to constitute a denial of due process.
Separation of Powers
It is my opinion further that the proposed amendment to A.C.A. §12-12-918 could be deemed to constitute a violation of the constitutional principle of separation of powers, arising under Article, 4, § 2 of the Arkansas Constitution. The Arkansas Supreme Court most recently discussed the issue of separation of powers in the context of judicial review of an administrative decision in Tomerlin v. Nickolich, 342 Ark. 325,27 S.W.3d 746 (2000). There, the court held that the question of whether the separation of powers principle prohibits or requires de novo review by the judiciary of an administrative decision will depend upon the nature of the interests affected by the administrative decision. If those interests are constitutionally or statutorily preserved or preserved by private agreement, de novo review by the judiciary is appropriate and will not violate the separation of powers principle. However, if those interests are not constitutionally or statutorily preserved or preserved by private agreement, de novo review by the judiciary would violate the separation of powers principle. In reaching its decision, the Tomerlin
court relied upon its previous holding in Goodall v. Williams,271 Ark. 354, 609 S.W.2d 25 (1980). The court's opinion in Goodall contained language indicating that the separation of powers principle would actually require de novo review by the judiciary if the affected interests were constitutionally or statutorily protected or protected by private agreement. The Goodall court stated:
 The doctrine of separation of powers therefore restricts the judiciary to a very limited review of those matters which are left to the wisdom of the executive in the application or execution of laws but imposes upon the judiciary the obligation to redetermine the matter when the executive redefines private rights.
Goodall, 271 Ark. at 356 (emphasis added).
This language from the Goodall decision reflects a related approach that the court has taken in other cases in analyzing the issue of judicial review of the decisions of administrative bodies. See, e.g., McCammon v.Boyer, 285 Ark. 288, 686 S.W.2d 421 (1985); Arkansas Commission onPollution Control Ecology v. Land Developers, Inc., 284 Ark. 179,680 S.W.2d 909 (1984); Wenderoth v. City of Ft. Smith, 251 Ark. 342,472 S.W.2d 74 (1971). Under this related approach, the court has analyzed the issue in terms of the nature of the administrative decision in question. That is, the court has inquired as to whether the administrative decision in question was legislative, executive, or judicial in nature. If the decision in question was legislative or executive in nature, de novo
review by the judiciary was deemed to violate the separation of powers principle. See Land Developers and Wenderoth, supra. But if the decision was judicial in nature, de novo review by the judiciary was deemed to be required by the separation of powers principle. See McCammon, supra.
In Prentis v. Atlantic Coast Line Co., 211 U.S. 210 (1908), the U.S. Supreme Court set forth guidelines for distinguishing between legislative and judicial decisions. The Court there stated:
 A judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. That is its purpose and end. Legislation on the other hand looks to the future and changes existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power.
Prentis, 211 U.S. at 226. The Arkansas Supreme Court has cited with approval and applied the Prentis guidelines. See, e.g., Ozarks Elec.Coop. Corp. v. Harrelson, 301 Ark. 123, 782 S.W.2d 570 (1990); OzarksElectric Coop. Corp. v. Turner, 277 Ark. 209, 640 S.W.2d 438 (1982);Southwestern Gas Electric Co. v. City of Hatfield, 219 Ark. 515,243 S.W.2d 378 (1951); City of Fort Smith v. Dept. of Public Utilities,195 Ark. 513, 113 S.W.2d 100 (1938).
It is my opinion that under both a Prentis analysis, which looks at the nature of the decision, and under a Goodall analysis, which looks at the nature of the affected interests, offenders must be given an opportunity to have the judiciary review decisions by the Sex Offender Assessment Committee determining that the offender should be classified as a sexually violent predator. Such decisions by the Committee are judicial in nature, in my opinion, because they declare the offender's liability under the registration requirements based upon past facts and under the laws that already exist. Prentis, supra. Moreover, because the determination by the Committee could commit the offender to certain lifetime restrictions on movement, the affected interest, in my opinion, could be deemed a constitutionally protected liberty interest. Goodall,supra. For these reasons, I conclude that if the law does not provide for judicial review of such decisions, the law violates the separation of powers principle. Because the proposed amendment to A.C.A. § 12-12-918
does not provide for review by the judiciary of the Committee's decisions, it could be deemed to be constitutionally problematic.
For all of the above reasons, I conclude that the proposed amendment to A.C.A. § 12-12-918 should be revised before being submitted as proposed legislation in the upcoming session of the General Assembly.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
J. LEON JOHNSON Attorney General
[1] It should be noted that sex offender registration requirements and similar requirements have also been held not to violate the prohibition of compelled self-incrimination in the 5th Amendment to the U.S. Constitution, see McKune v. Lile, 00-1187, (U.S. 2002), the 5th
Amendment's prohibition of double jeopardy, see Seling v. Young,531 U.S. 250 (2001); Kansas v. Hendricks, 521 U.S. 346 (1997), or the prohibition against ex post facto laws in Article 1, § 10 of the U.S. Constitution and Article 2, § 17 of the Arkansas Constitution.See Kellar v. Fayetteville Police Department, 339 Ark. 274, 5 S.W.3d 402
(1999).
[2] It appears to be well-established that constitutionally protectable liberty interests are either inherent in the constitution itself, or may be created by state law. See E.B. v. Verniero, 119 F.3d 1077 (3d Cir. 1997), citing Sandlin v. Conner, 515 U.S. 472 (1995).