2010 Ark. 124

**Gary CRAWFORD, Appellant,**

**v.**

**Mark CASHION, Warden, Delta Regional Unit; Ronald Gana, Assistant Warden; Major J.M. Davis; Captain Lagrone; and Shamon Tyler, Classification Officer, Appellees.**

**No. 09–913.**

Supreme Court of Arkansas.

March 11, 2010.

No briefs filed.

PER CURIAM.

[1]Appellant Gary Crawford, a prisoner incarcerated in the Arkansas Department of Correction, filed a pro se petition for declaratory judgment and writ of mandamus in the Chicot County Circuit Court. Appellant argued that he was entitled to better living conditions and a better work assignment based on his classification as a Class I–C inmate. The trial court dismissed the petition with prejudice, and appellant has lodged an appeal of that order in this court. Now before us is appellant's timely filed and properly notarized pro se motion requesting a forty-five day extension in which to file his brief-in-chief.[1] Because it [2]is clear that appellant cannot prevail, we dismiss the appeal. The motion for extension of time is moot.

An appeal from an order that denied a petition for postconviction relief, including civil postconviction remedies, will not be permitted to go forward where it is clear that the appellant could not prevail. *See Pierce v. State,* 2009 Ark. 606, 2009 WL 4405790 (per curiam); *Grissom v. State,* 2009 Ark. 557, 2009 WL 3681389 (per curiam); *Pardue v. State,* 338 Ark. 606, 999 S.W.2d 198 (1999) (per curiam); *Seaton v. State,* 324 Ark. 236, 920 S.W.2d 13 (1996) (per curiam). This court treats declaratory judgment proceedings as applications for postconviction relief in those instances where a prisoner seeks relief from the conditions of his incarceration. *See McKinnon v. Norris,* 366 Ark. 404, 231 S.W.3d 725 (2006) (per curiam); *see also Neely v. McCastlain,* 2009 Ark. 189, 306 S.W.3d 424. Here, appellant fails to state a basis for declaratory judgment under Arkansas Code Annotated §§ 16–11–101 to –111 (Repl.2006). Without establishing a right to declaratory judgment, appellant provides no basis for a writ of mandamus to issue. *See Dukes v. Norris,* 369 Ark. 511, 256 S.W.3d 483 (2007) (per curiam).

This court has held that declaratory relief lies where four requisite conditions are met: (1) there is a justiciable controversy; (2) it exists between parties with adverse interests; (3) those seeking relief have a legal interest in the controversy; (4) the issues involved are ripe for decision. *Id.* In its June 8, 2009 order, the trial court found that, inasmuch as appellant's petition failed to state a cognizable cause of action for declaratory judgment in that the trial [3]court lacked jurisdiction to hear an inmate's grievance regarding his living and working assignments, there was no justiciable controversy presented. We review this determination de novo, and we will uphold the trial court's decision in a declaratory judgment action such as this

1. Appellant's brief-in-chief was originally due in our clerk's office by September 22, 2009, but he requested a seven-day extension in which to file it. We granted the extension pursuant to Arkansas Supreme Court Rule 4–7(d)(4) (2009). One of our staff attorneys informed appellant by letter that his brief-in-chief or, alternatively, a written motion for extension bearing appellant's notarized signature was due no later than September 29, 2009. The instant motion was filed on that date.

unless it is clearly erroneous. *See McKinnon,* 366 Ark. 404, 231 S.W.3d 725.

The gravamen of appellant's complaint is that, as an inmate with class I–C status, he is entitled to certain earned rights and privileges, to wit: the right to be housed with inmates of a similar classification and the right to be assigned work commensurate with appellant's I–C classification. The Arkansas Department of Correction's failure to change appellant's housing and work assignments in accordance with these rights, appellant argues, is solely due to prejudice harbored against appellant by the named appellees, which amounts to a violation of appellant's due process rights and is a violation of the Eighth Amendment's ban on cruel and unusual punishment.[2]

|4We have previously recognized that administrative agencies, due to their specialization, experience, and greater flexibility of procedure, are better equipped than courts to analyze legal issues dealing with their agencies. *Dukes,* 369 Ark. at 516, 256 S.W.3d at 487; *Clinton v. Bonds,* 306 Ark. 554, 557, 816 S.W.2d 169, 171 (1991). In particular, the administration of prisons has generally been held to be beyond the province of the courts. *Clinton,* 306 Ark. at 557, 816 S.W.2d at 171. Therefore, we have consistently declined to dictate the operation of the Arkansas Department of Correction. *See, e.g., Martin v. State,* 340 Ark. 719, 13 S.W.3d 576 (2000) (per curiam). An exception to our reticence to entertain a prisoner's administrative complaints occurs when the appellant asserts an infringement upon constitutional rights. *Clinton,* 306 Ark. at 557, 816 S.W.2d at 171–72. Our threshold inquiry, then, is whether appellant raises a legitimate constitutional issue. We hold that he does not.

The Fourteenth Amendment to the Constitution provides, in pertinent part, that no state shall "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend XIV, § 1. There is no question that appellant was not deprived of life or property; thus he must identify a liberty interest that he was deprived of through Department of Correction action, if appellant hopes to sustain his due process claim. The Supreme Court has set forth the appropriate test for determining liberty interests in a prison setting.

> States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from |5restraint which, while

2. Appellant also alleged that he was due "a Jury trial in which to present his arguments as is his right pursuant to Amendment 7 of the United States Constitution." However, the Seventh Amendment is inapplicable to proceedings in state court. *Osborn v. Haley,* 549 U.S. 225, 252 n. 17, 127 S.Ct. 881, 166 L.Ed.2d 819 (2007) (citing *Minneapolis & St. Louis R. Co. v. Bombolis,* 241 U.S. 211, 217, 36 S.Ct. 595, 60 L.Ed. 961 (1916)). The right to a trial by jury under the Arkansas Constitution is found in Article 2, section 7. That provision does not secure the right in all possible instances but only in those cases in which it existed when the constitution was framed; it extends only to the trial of issues of fact in civil and criminal causes. *See First Nat'l Bank of DeWitt v. Cruthis,* 360 Ark. 528, 203 S.W.3d 88 (2005); *Jones v. Reed,* 267 Ark. 237, 590 S.W.2d 6 (1979). Thus, where there is no factual dispute, there is no constitutional right to a trial by jury. *Anglin v. Johnson Reg'l Med. Ctr.,* 375 Ark. 10, 289 S.W.3d 28 (2008). Further, Arkansas statutory law provides for a jury trial in declaratory-judgment actions only when the proceeding involves the determination of an issue of fact. Ark.Code Ann. § 16–111–107. As appellant's petition fails to establish a prima facie constitutional violation, there was no issue of fact for a jury to determine. The trial court's decision that appellant was not entitled to a jury trial was therefore not erroneous.

not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Sandin v. Conner*, 515 U.S. 472, 483–84, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995) (citations omitted).

Thus, to establish his claim of a substantive due process violation, appellant must show an atypical and substantive deprivation that was a dramatic departure from the basic conditions of his confinement. *Munson v. Ark. Dep't of Corr.*, 375 Ark. 549, 294 S.W.3d 409 (2009) (per curiam); *see also Rahman X v. Morgan*, 300 F.3d 970 (8th Cir.2002) (holding that, to prevail on a due process claim based on prison housing, inmate must show that his placement created an atypical and significant hardship on him in relation to the ordinary incidents of prison life). This, the appellant cannot show.

Every male inmate in the custody of the Arkansas Department of Correction is initially evaluated at the Department's Diagnostic Unit in Pine Bluff, AR, where he receives physical, psychological, and academic examinations and is medically and mentally classified. Ark. Dep't of Corr., *Guide for Family and Friends* 3 (2008). Upon leaving the Diagnostic Unit, inmates are transferred to a "parent unit" facility for their initial work assignment, which usually consists of at least sixty days working in the field on a "hoe squad." *Id.* at 3, 20.

Inmates are classified in three ways: custody classification, meritorious-good-time classification, and medical classification. *Id.* at 4; Ark.Code Ann. § 12–29–101 (Repl.2009); Ark.Code Ann. § 12–29–202 (2009); *see generally* Ark.Code Ann. §§ 12–29–402 to –403 (2009) (discussing medical evaluation as it relates to an inmate's work assignment). Only ⌊6 meritorious-good-time classification, which refers to an inmate's eligibility to reduce his transfer eligibility date up to thirty days for each month that he is incarcerated, is at issue in the instant case. Ark.Code Ann. § 12–29–201 (2009).[3] This classification applies solely to the consistent application of meritorious good time; it has no correlation to an inmate's initial assignment to the hoe squad, save for the fact that an inmate's refusal to work in the field may result in his demotion to class III or class IV. *See* Ark.Code Ann. § 12–29–202(b), (c).

Thus, for purposes of establishing a substantive due process violation, we note that the basic conditions of appellant's (and every other male inmate's) confinement are working in the field as part of a hoe squad and being housed in whatever manner the Arkansas Department of Correction normally houses hoe-squad-assigned inmates. As appellant still lives and works in the very locations that define his basic conditions of confinement, he cannot demonstrate a deprivation that would constitute a dramatic departure therefrom. Appellant's claim of a due process violation based on Department of Correction officials refusing to change his housing or working assignments accordingly fails. *See Munson*, 375 Ark. 549, 294 S.W.3d 409.

There is no merit in appellant's contention that he is entitled to better housing

3. All inmates are labeled as either class I, II, III, or IV, and each level earns "good time" credit at a different rate. Ark.Code Ann. § 12–29–202; *Guide to Friends and Family* 4. Initially, all inmates are placed in class II status when they arrive at the Department, and subsequent promotion to class I (or demotion to class III or IV) is handled by the Department's Unit Classification Committee. *Guide to Friends and Family* 4.

and labor assignments and is, therefore, suffering an atypical and substantive deprivation by ⌊7remaining in the less-desirable arrangements. Appellant has cited no authority for the proposition that meritorious-good-time classification carries with it a right to certain housing or work detail. Yet, even were we to ignore his lack of authority on the point, the mere fact that appellant is of a higher classification than the other men in his barracks for purposes of calculating meritorious good time does not in and of itself give rise to a constitutional claim. *See Moody v. Daggett,* 429 U.S. 78, 88 n. 9, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976) (holding that classification of prisoners involves no constitutional rights sufficient to implicate due process).

Arkansas law commits prisoner classification to the discretion of prison officials and does not protect an inmate's right to any particular classification or raise due-process concerns. Ark.Code Ann. § 12–29–202(a)(3), (c); *see also Strickland v. Dyer,* 628 F.Supp. 180 (E.D.Ark.1986). We have held prisoners to have no liberty interest in meritorious good time. *McKinnon,* 366 Ark. 404, 231 S.W.3d 725. Even a loss of class status and privileges that impacts meritorious good time does not compromise a liberty interest. *Munson,* 375 Ark. at 552, 294 S.W.3d at 411. It stands to reason that, if there is no liberty interest in a prisoner's classification or in the meritorious good time that a prisoner might accrue by virtue of that classification, there is certainly no liberty interest merely in being housed with or employed alongside other prisoners of similar classifications.

Appellant's other alleged constitutional claim is that he is being subjected to cruel and unusual punishment in violation of the Eighth Amendment to the Constitution. As a general rule, a prison official cannot be found liable under the Eighth Amendment for denying an ⌊8inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety. *Shepherd v. Washington County,* 331 Ark. 480, 503, 962 S.W.2d 779, 789–90 (1998) (quoting *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). When the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment. *DeShaney v. Winnebago County Dep't of Social Servs.,* 489 U.S. 189, 200, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989).

Appellant argues that some inmates in the field utility barracks where appellant is housed masturbate in view of others, thereby creating a risk that appellant might contract an infectious disease. He also asserts that there is "excessive noise" in the barracks, which causes appellant to suffer unduly in relation to other inmates. Both of appellant's contentions are unavailing. Neither the mere unsubstantiated risk that appellant might contract a disease because another inmate is masturbating in the same barracks, nor the fact that appellant's living quarters might be louder than the average prison barracks demonstrates a failure by prison officials to provide for appellant's basic human needs.

Even taken in the light most favorable to appellant, his claim merely alleges cruel and unusual conditions; he does not demonstrate that any of the named appellees knew of and disregarded an excessive risk to appellant's health and safety. The Supreme Court has explained that

> [t]he Eighth Amendment does not outlaw cruel and unusual "conditions;" it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Farmer,* 511 U.S. at 837–38, 114 S.Ct. 1970 (citations omitted).

Because both of appellant's constitutional arguments fail, he did not plead facts so as to support a constitutional infringement necessary to fall within the exception to our general rule that we do not substitute our judgment for that of the prison administration. *See Clinton,* 306 Ark. at 557, 816 S.W.2d at 171. Additionally, because appellant failed to plead facts necessary to state a cause of action for declaratory judgment, he also failed to state a case supporting the issuance of a writ of mandamus. *Dukes,* 369 Ark. at 517, 256 S.W.3d at 487. The purpose of a writ of mandamus is to enforce an established right or to enforce the performance of a duty. *Id.*

Here, appellant has based his request for the writ upon the establishment of a right to the declaratory judgment he requested. Appellant did not plead facts sufficient to warrant declaratory judgment and, accordingly, he did not establish a right that could be a basis for issuance of a writ of mandamus. Therefore, his appeal is dismissed, and appellant's motion for extension of time in which to file his brief-in-chief is moot.

Appeal dismissed; motion moot.