Cite as 2019 Ark. 240

# SUPREME COURT OF ARKANSAS

No. CV-18-488

| | |
|---|---|
| MALIK MUNTAQIM<br><br>APPELLANT<br><br>V.<br><br>WENDY KELLEY, DIRECTOR, ARKANSAS DEPARTMENT OF CORRECTION; JADA LAWRENCE, EXECUTIVE ASSISTANT TO THE DIRECTOR OF ARKANSAS DEPARTMENT OF CORRECTION; RAYMOND NAYLOR, DISCIPLINARY HEARING ADMINISTRATOR; JUSTINE MINOR, DISCIPLINARY HEARING OFFICER; NURZUHAL FAUST, WARDEN, OUACHITA RIVER CORRECTIONAL UNIT; BARBARA HOLLIMAN, ADMINISTRATIVE REVIEW OFFICER; JACOB KING, EX-CAPTAIN, OUACHITA RIVER CORRECTIONAL REVIEW OFFICER; AND WINBURN MELUGIN, JR., LIEUTENANT, OUACHITA RIVER CORRECTIONAL UNIT<br><br>APPELLEES | Opinion Delivered: September 12, 2019<br><br>PRO SE APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SEVENTEENTH DIVISION [NO. 60CV-18-738]<br><br>HONORABLE MACKIE M. PIERCE, JUDGE<br><br>AFFIRMED. |

**SHAWN A. WOMACK, Associate Justice**

Malik Muntaqim, an inmate of the Arkansas Department of Correction (ADC), appeals

the denial of his petition to proceed in forma pauperis in a civil action requesting judicial

review under the Administrative Procedure Act (APA). He claims prison officials initiated

and conducted a disciplinary proceeding against him in violation of his constitutional

rights. Because we conclude Muntaqim failed to sufficiently raise a constitutional question, we affirm for reasons set forth below.

## I. *Factual Background*

While incarcerated at the Ouachita River Unit of ADC, Muntaqim requested transfer to the Varner Unit. In that request, he wrote that he "will not do a year class 4 at [Ouachita River] before something crazy happens because staff here has no respect for black people." When asked whether that statement was a threat toward prison officials, Muntaqim replied he was "just letting the major know . . . something crazy will happen" if his transfer was not granted. He was subsequently charged with a major disciplinary violation for failure to obey staff orders, insolence towards staff, and assault. After a hearing, Muntaqim was found guilty of assault and insolence towards staff. He received twenty days in punitive isolation and a class reduction. He also lost commissary, phone, and visitation privileges for sixty days.

Muntaqim appealed his disciplinary conviction and alleged that prison officials failed to comply with ADC disciplinary policy. His administrative appeal was rejected as untimely. He also filed multiple grievances stemming from the disciplinary process, accusing prison officials of engaging in retaliatory conduct motivated by racial animus and failing to comply with the disciplinary policy. Those grievances were found to be without merit.

Muntaqim sought judicial review of his disciplinary charges under the APA and petitioned to proceed in forma pauperis. He named multiple ADC officials in their official

2

and individual capacities, claiming they failed to adhere to ADC disciplinary policies. The circuit court denied that petition, concluding that Muntaqim failed to state a colorable cause of action and that ADC officials were entitled to sovereign immunity. This appeal followed.

## II. *Standard of Review*

We review a decision denying a petition to proceed in forma pauperis for abuse of discretion. *Muldrow v. Kelley*, 2018 Ark. 126, at 2, 542 S.W.3d 856, 858. The right to proceed in forma pauperis in a civil action turns on the petitioner's indigency and the circuit court's satisfaction that the alleged facts indicate a colorable cause of action. Ark. R. Civ. P. 72(c) (2017). The circuit court must make a specific finding of indigency before considering whether the underlying petition alleges a colorable cause of action. *Gardner v. Kelley*, 2018 Ark. 212, at 2, 549 S.W.3d 349, 350. Because the court below failed to make this finding, we must remand unless the record shows the underlying cause of action cannot proceed as a matter of law. *Id.* As to issues of law presented, our review is de novo. *Ashby v. State*, 2017 Ark. 233, at 2–3.

Judicial review of administrative complaints is generally unavailable to ADC inmates. *See* Ark. Code Ann. § 25-15-212(a) (Repl. 2014). But this rule does not preclude review of an asserted constitutional violation. *Clinton v. Bonds*, 306 Ark. 554, 558, 816 S.W.2d 169, 172 (1991). This exception is not triggered by conclusory allegations of a constitutional violation. *Smith v. Hobbs*, 2014 Ark. 270, at 4 (per curiam). When an inmate challenges a disciplinary proceeding and prison officials' implementation of ADC policy, as

3

Muntaqim does here, the petition must allege a constitutional question sufficient to raise a liberty interest. *Id.* Otherwise, the claim cannot fall within the classification of claims subject to judicial review. *Id.* Muntaqim contends that ADC officials violated due process, equal protection, and the First Amendment. Our de novo review of the record, however, reveals that Muntaqim's petition clearly failed to sufficiently raise a constitutional question.

### III. *Due Process*

Muntaqim contends that ADC officials violated due process by failing to adhere to ADC disciplinary and grievance policies. In essence, Muntaqim claims a constitutional liberty interest in having prison officials follow ADC policy. But those policies do not create a liberty interest to which due process can attach. *See Munson v. Ark. Dep't of Corr.*, 375 Ark. 549, 552, 294 S.W.3d 409, 411 (2009) (per curiam) (citing *Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996)). Rather, any alleged liberty interest must be an interest in the nature of the prisoner's confinement, "not an interest in the procedures by which the state believes it can best determine how he should be confined." *Kennedy*, 100 F.3d at 643.

A liberty interest with respect to prison disciplinary actions is not created by the "language of a particular [prison] regulation" but is instead created by an evaluation of the nature of the deprivation "in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 481–84 (1995). Substantive due process is triggered only when prison discipline imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. *Id.* at 484. Thus, in order for Muntaqim to assert a

4

liberty interest, he must show an atypical and substantive deprivation that was a dramatic departure from the basic conditions of his confinement. *Id.* at 484–85.

Muntaqim does not contend the punishment imposed as a result of his infractions was atypical. Nor can he. There is no liberty interest protecting against a twenty-day assignment to punitive isolation because it does not "present a dramatic departure from the basic conditions of [Muntaqim's] sentence." *Id.* at 485 (no liberty interest protecting against thirty days in segregation). Additionally, there is no liberty interest in good time, class status, or the restricted privileges. *See Munson*, 375 Ark. at 552, 294 S.W.3d at 411; *Kennedy*, 100 F.3d at 642-43 and n.2. Muntaqim thus failed to allege any due process violation.

IV. *Retaliation and the First Amendment*

A prison official may not file a disciplinary charge based upon false allegations in retaliation for the inmate's filed grievances against prison officials. *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994). But "claims of retaliation fail if the alleged retaliatory conduct violations were issued for the actual violation of a prison rule." *Hartsfield v. Nichols*, 511 F.3d 826, 829 (8th Cir. 2008). "While a prisoner can state a claim of retaliation by alleging that disciplinary actions were based upon false allegations, no claim can be stated when the alleged retaliation arose from discipline imparted for acts that a prisoner was not entitled to perform." *Orebaugh v. Caspari*, 910 F.2d 526, 528 (8th Cir. 1990).

If the disciplinary decision is supported by "some evidence," the filing of the disciplinary charge may not support a retaliation claim. *Sanders v. Hobbs*, 773 F.3d 186,

190 (8th Cir. 2014).  A report from a prison official, even if disputed by the inmate and supported by no other evidence, sufficiently provides "some evidence" to support a disciplinary action if the violation is upheld by an impartial decisionmaker.  *Hartsfield*, 511 F.3d at 831.  Thus, when there is a disciplinary decision affirming the charge, the critical inquiry is whether the disciplinary hearing officers ultimately found that, based upon some evidence, the prisoner committed the charged violations.  *Henderson*, 29 F.3d at 469.

Muntaqim claims the disciplinary charges were brought in retaliation for exercising his right to seek redress of his grievances.  He also contends his administrative appeal was denied as untimely for similar reasons.  But these charges were supported by "some evidence" that Muntaqim had threatened and acted insolent toward prison officials. Indeed, Muntaqim admitted in one of his grievances that he told ADC officials that his transfer request should be granted "before something crazy happens."  Further, it is undisputed that an ADC official filed a report detailing the assault and insolence towards staff.  It is also undisputed that Muntaqim was given a disciplinary hearing at which he was found guilty of those charges.  He has not alleged that the hearing officer was biased.  His only allegations against the hearing officer turned on alleged failures to follow ADC policy during the disciplinary process.  But as discussed above, there is no constitutional interest attached to those policies.  Muntaqim thus failed to allege sufficient facts showing that the disciplinary actions were not supported by some evidence that he had committed the charged violations.

V.  *Equal Protection*

6

Equal protection is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). The first step in evaluating an equal protection claim is determining whether the plaintiff has demonstrated differential treatment compared to others who were similarly situated. *Klinger v. Dep't of Corr.*, 31 F.3d 727, 731 (8th Cir. 1994). Absent a threshold showing that an inmate is similarly situated to those who allegedly receive more favorable treatment, the plaintiff does not have a viable equal protection claim. *Id.* Muntaqim failed to satisfy this threshold showing. He offered nothing more than conclusory allegations of racial bias. He did not allege that he was subject to any differential treatment or was treated less favorably than similarly situated inmates of a different race. Accordingly, his conclusory allegations fail to state an equal protection claim as a matter of law.

Because Muntaqim did not state sufficient allegations entitling him to judicial review of ADC's administrative procedures, the circuit court's decision is affirmed.

Affirmed.

HART, J., dissents.

**JOSEPHINE LINKER HART, Justice, dissenting.** I dissent. Contrary to the majority's holding, Muntaqim has raised a perfectly cognizable constitutional question: whether the disciplinary action against him by Arkansas Department of Correction (ADC) officials constitutes an unconstitutional retaliation by government actors. Moreover, there is no evidence in this record to support the underlying disciplinary action against Muntaqim.

7

Instead of affirming the circuit court's erroneous holding that Muntaqim has no colorable cause of action, we should reverse and remand for further proceedings.

## I. *Background*

The majority's characterization of the claims asserted by Muntaqim is inadequate, and a more complete summary of the actual allegations in Muntaqim's petition is required. Muntaqim is a known lay advocate inside the ADC system, both for himself and other inmates. According to Muntaqim's petition, while incarcerated at the Ouachita River Correctional Unit (ORCU), he observed "systemic bigotry and racist white suprem[acist] treatment of black and Mexican inmates" by ORCU staff. He reported these observations to the Civil Rights Division of the U.S. Justice Department, to Governor Asa Hutchinson, to media outlets, and to others. Muntaqim asserts that when black or Mexican inmates were subjected to unjust action by ORCU staff, those inmates would come to him for assistance in writing their grievances, disciplinary appeals, and letters or affidavits to seek redress.

The actual substance of Muntaqim's petition is that the appellees have illegitimately engineered the present disciplinary action against him in an effort to silence his advocacy, in violation of the first amendment and other federal constitutional authorities. Muntaqim asserts that he wrote what he titled a "Request for Interview" (request slip) to Major Bolden at ORCU in which he sought a transfer to the Varner unit, specifically because of alleged racism by ORCU staff. Muntaqim did this at the direction of Deputy Director Dexter Payne, who advised Muntaqim that if he was having issues, he should

8

write to Major Bolden. Muntaqim asserts that after he sent his request slip to Major Bolden, on August 18, 2017, he was brought to a control room by Lieutenant Melugin. Lieutenant Melugin is one of the staff members Muntaqim had identified in his aforementioned reports to the U.S. Justice Department and others. There, Lieutenant Melugin confronted Muntaqim with part of the request slip he had written to Major Bolden, which according to ADC-generated reports stated, "I will not do a year class 4 at this unit before something crazy happens because staff here has no respect for black people."

Inexplicably, the original slip request written by Muntaqim to Major Bolden is not contained anywhere in the record; the record contains only second-hand references to the statements that were made in the actual slip request. The ADC-generated reports state that, after Lieutenant Melugin had Muntaqim brought to the control room and asked what he meant in that part of his statement, Muntaqim responded by stating, "I was just letting the major know, that something would happen, if I was not transferred because I cannot do a year as a Class 4 inmate at this unit." On the other hand, Muntaqim argues that his words have been mischaracterized to suggest that he said "I will not *do* (another) year (in this facility)" when in fact he said "I will not *make it* another year (in this facility)." In his grievance filed against Lieutenant Melugin, Muntaqim stated,

> I did not threaten anyone, and I did not send the request to Capt King or Lt. Melugin. I was exercising my First Amendment right to "Seek redress for grievances from a government official." Furthermore, I was also giving my opinion of a situation based off knowledge of myself and observation of what is considered to be racist practices by Ouachita's staff. It was my opinion, I should be transferred

9

before something crazy happens because Ive seen a mob of white officers jumping black inmates and in my opinion I would not handle that well.

Generally, Muntaqim maintains that the statement in question was simply an expression of anxiety as to the precarious state of affairs at ORCU, made in support of his request to be transferred to a different unit. He rejects any characterization of his statements as a "threat" toward anyone at ORCU or elsewhere.

According to Muntaqim, ORCU staff has seized upon the language contained in his slip request in an effort to mischaracterize and recast it as a threat against ORCU staff, i.e., that Muntaqim himself might initiate "something crazy" against prison officials if they did not honor his transfer request, rather than that the ORCU staff might initiate "something crazy" against him or other inmates. Muntaqim asserts that Melugin specifically was motivated by the fact that Muntaqim's aforementioned correspondence with outside government officials reported that Lieutenant Melugin targeted another black inmate named Jeremiah Smith. ADC took Muntaqim's statement as an opportunity and used it as the basis for a major disciplinary against him for "12-3 Failure to obey verbal and/or written order(s) of staff[;] 11-1 Insolence to a staff member[;] 5-3 assault—any threat(s) to inflict upon another, directly or indirectly, verbally or in writing." Muntaqim was then locked in isolation for thirty days and deprived of any commissary, visitation, or phone usage for sixty days.

To support his alleged characterization of the circumstances, Lieutenant Melugin also indicated in the disciplinary report that Muntaqim is a member of the "Highland Park

10

Bloods," when according to Muntaqim, he is a practicing Muslim with no gang affiliation whatsoever. Furthermore, Muntaqim points out that he was returned to general population at ORCU after the threats allegedly occurred where he would continue to interact with the same staff members who allegedly felt threatened.

Muntaqim appealed this disciplinary action through the applicable administrative process, which he asserts ADC officials attempted to thwart his efforts by denying him access to pertinent materials until after certain deadlines had passed,[1] before finally filing his petition for judicial review in the Pulaski County Circuit Court. This delayed receipt of materials was one of several alleged "procedural irregularities" that took place in this administrative appeal process and that would operate to Muntaqim's detriment. Another allegation, important here, is that the hearing officer that handled Muntaqim's administrative appeal failed to follow applicable evidentiary rules for receiving and considering evidence in a given proceeding. Specifically, Muntaqim was issued a major disciplinary for statements allegedly contained in a "Request for Interview" (i.e., the slip request) sent to Major Bolden, yet no documentary information regarding the original request was received or discussed as part of the hearing officer's decision whatsoever. Instead, the hearing officer listed in the "Evidence Relied Upon" section of her report the "F-1 statement from charging officer" Lieutenant Melugin. Muntaqim's petition alleged

---

[1] Muntaqim also alleges that the administrative appeal process for written grievances he filed against ORCU staff regarding these incidents was plagued by similar circumstances.

11

that all these circumstances amount to a violation of his due-process and first amendment rights, engineered for the specific purpose of silencing his advocacy.

With the filing of his petition for judicial review, Muntaqim also requested in forma pauperis status, but the circuit court denied his request. Regarding in forma pauperis status, Rule 72(c) of the Arkansas Rules of Civil Procedure provides as follows:

> The court shall make a finding regarding indigency based on the affidavit. In making its determination, the court may consider the current federal poverty guidelines which may be obtained from the Administrative Office of the Courts. If satisfied from the facts alleged that the petitioner has a colorable cause of action, the court may by order allow the petitioner to prosecute the suit in forma pauperis.

In assessing Muntaqim's in forma pauperis petition, the circuit court failed to assess Muntaqim's indigency, but did find that Muntaqim's petition failed to state a colorable cause of action. The circuit court denied his in forma pauperis request, citing to this court's then-recent decision in *Board of Trustees of University of Arkansas v. Andrews*, 2018 Ark. 12, at 2, 535 S.W.3d 616, 618. The circuit court's order read as follows:

> Specifically, the recent Arkansas Supreme Court decision in *The Board of Trustees of the University of Arkansas v. Andrews*, 2018 Ark. 12 (January 18, 2018) holds that the State of Arkansas is immune from suit in state courts pursuant to article 5 of the Arkansas State Constitution. Defendants are essentially instrumentalities of the State of Arkansas and cannot be sued in state court in their official capacities in light of the *Andrews* decision. Therefore, the Court finds that Petitioner, Malik Muntaqim, has no colorable cause of action. [. . . ] The Petition for Leave to Proceed In Forma Pauperis is denied.

Muntaqim then appealed to this court.

II. *Discussion*

12

The issue here is whether Muntaqim's petition states a colorable cause of action. The majority does not defend the circuit court's conclusion that Muntaqim "had no colorable cause of action" because of the defendants' sovereign immunity or the *Andrews* decision. Instead of addressing the circuit court's sovereign-immunity rationale, the majority affirms the circuit court's denial simply by finding that Muntaqim has failed to state a claim upon which relief can be granted, a la Rule of Civil Procedure 12(b)(6). Assuming without conceding that the circuit court made such a decision, which it did not, this would also be incorrect. It has long been the law that incarcerated individuals must be able to petition for judicial review of constitutional questions. *Clinton v. Bonds*, 306 Ark. 554, 816 S.W.2d 169 (1991). It has also long been the law that prison officials cannot subject prisoners to retaliatory disciplinary action based upon false allegations or for simply exercising a constitutional right. *See, e.g., Goff v. Burton*, 7 F.3d 734, 738 (8th cir. 1993) ("Just as prison officials cannot lawfully transfer a prisoner for retaliatory reasons alone, so they cannot impose a disciplinary sanction against a prisoner in retaliation for the prisoner's exercise of his constitutional right.") (citing *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir.1989)). These are exactly the sorts of constitutional claims Muntaqim raises in his petition, as set forth above.

Nonetheless, the majority affirms, offering that Muntaqim has "*clearly* failed to *sufficiently raise* a constitutional question." The majority reaches this curiously worded holding by finding that the disciplinary action at issue here has at least support from "some

13

evidence" in the record, which essentially makes the propriety of that disciplinary action unreviewable. I disagree.

It is true that "[w]hile a prisoner can state a claim of retaliation by alleging that disciplinary actions were based upon false allegations, no claim can be stated when the alleged retaliation arose from discipline imparted for acts that a prisoner was not entitled to perform." *Orebaugh v. Caspari*, 910 F.2d 526, 528 (8th Cir. 1990). It is also true that when "the disciplinary decision is supported by 'some evidence,' the filing of the disciplinary charge may not support a retaliation claim." *Sanders v. Hobbs*, 773 F.3d 186, 190 (8th Cir. 2014). However, there is no such supporting evidence here. Again, the original slip request that Muntaqim wrote to Major Bolden is not contained anywhere in the record, and its absence is conspicuous and suggestive. Moreover, the only "evidence" the majority cites to suggest there is "some evidence" sufficient to support the threat allegation (the written grievance Muntaqim filed against Lieutenant Melugin) is entirely favorable to Muntaqim. While the grievance did acknowledge Muntaqim's prior request to be transferred "before something crazy happens," the grievance supplies no acknowledgement whatsoever of actual wrongdoing on Muntaqim's part. This grievance, which Muntaqim wrote on the same day he had earlier been confronted and placed in isolation by Lieutenant Melugin, recounts Muntaqim's expressed anxiety that he "would not make it" another year, and does not support an allegation of a threat in any respect.

III. *Conclusion*

14

I fear the majority's decision here will effectively undermine any unconstitutional retaliation arguments, even meritorious ones, raised by incarcerated individuals in the future. The majority states that the allegation of a threat by Muntaqim is supported by "some evidence," which the law says is sufficient to preclude further inquiry, but the only evidence the majority can come up with is the fact that Muntaqim was accused at all. That cannot be sufficient to preclude further inquiry, or the legal authorities contemplating judicial review in these cases might as well not even exist. The majority here endorses violations of Muntaqim's first amendment and due-process rights, all while claiming that Muntaqim does not even have a constitutionally protected interest in how the prison handles its business in the first place. This, of course, altogether misses the point that it is the retaliatory nature of a given government action that gives rise to the protectable interest. *See, e.g.*, *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989) ("Sprouse's claims based on the falsity of the charges and the impropriety of Babcock's involvement in the grievance procedure, standing alone, do not state constitutional claims. Here, however, these claims were *linked to a retaliation claim*.") (internal citations omitted). Muntaqim's entire argument is that the government is engineering this disciplinary process to punish and deter him from exercising his constitutional rights, which is exactly what the constitutional principles discussed in cases like *Sprouse* are intended to guard against.

I dissent.

*Leslie Rutledge*, Att'y Gen., by: *Robert T. James*, Ass't Att'y Gen., for appellee.

15