# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 18-3611

———————————————

Napoleon-Ahmed Mbonyunkiza

Plaintiff - *Appellant*

v.

Jeff Beasley; Kristine Weitzell

Defendants - *Appellee*s

———————

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

———————

Submitted: December 12, 2019
Filed: April 24, 2020

———————

Before LOKEN, GRASZ, and STRAS, Circuit Judges.

———————

LOKEN, Circuit Judge.

Iowa inmate Napolean-Ahmed Mbonyunkiza has been a practicing Muslim since birth; his religious beliefs forbid consumption of pork or pork by-products. In 2017, Mbonyunkiza filed four separate grievances claiming he had eaten or been served food items that contained pork. Dissatisfied with the responses, Mbonyunkiza filed this 42 U.S.C. § 1983 damage action against Food Services Director Jeff Beasley and Warden Kristine Weitzell of the Newton Correctional Facility ("NCF")

in Newton, Iowa, alleging violations of his First Amendment right to free exercise of religion. The district court[1] granted summary judgment in favor of Beasley and Weitzell. Mbonyunkiza appeals. Reviewing the grant of summary judgment *de novo* and viewing the evidence in the light most favorable to the non-moving party, we conclude Mbonyunkiza failed to show defendants deprived him of a constitutional right and therefore affirm. See Parks v. City of Horseshoe Bend, 480 F.3d 837, 839 (8th Cir. 2007) (standard of review).

## I. Background

The Prison Litigation Reform Act of 1995 provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any . . . correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Congress strengthened and made mandatory this exhaustion provision "to reduce the quantity and improve the quality of prisoner suits [by] afford[ing] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Porter v. Nussle, 534 U.S. 516, 524-25 (2002). Full exhaustion is required even when, as in this case, the inmate seeks a damage remedy the grievance process does not award. See Booth v. Churner, 532 U.S. 731, 741 (2001).

A four-step grievance procedure created by the Iowa Department of Corrections ("IDOC") Central Office is available to NCF inmates. First, the inmate must attempt informal resolution. Second, the inmate files a formal grievance with the NCF grievance officer within thirty days of the incident; the grievance officer must investigate and respond within twenty-one days. Third, a dissatisfied inmate may appeal to the Warden, who must respond within fifteen days. Fourth, if still

---

[1]The Honorable Stephanie M. Rose, United States District Judge for the Southern District of Iowa.

dissatisfied, the inmate may appeal to the IDOC Central Office, which must respond within thirty days. In this case, defendants contested whether Mbonyunkiza fully exhausted two of the four grievances, but they do not challenge on appeal the district court's ruling that all four were fully exhausted. Although exhaustion is therefore not at issue, given the purpose of the requirement, Mbonyunkiza's four grievances and the prison administrators' responses are important background facts.

1. On March 29, 2017, Mbonyunkiza submitted grievance No. 32317 alleging that, during breakfast that day and several other times, he was served a pop tart pastry that contained gelatin made from pork. He asked that the pop tart no longer be served and that he be paid $200,000 because "my faith had been and continues to be abused by NCF Main Kitchen Staffs." The NCF Executive Officer responded that Food Services Director Beasley contacted the manufacturer to determine whether the pop tart contained pork gelatin. Because the manufacturer was only 95% sure the gelatin was derived from beef, not pork, Beasley decided to stop purchasing that brand of toaster pastry. The grievance was denied because "[m]onetary compensation is not a resolution attainable through the grievance process." Mbonyunkiza appealed the denial of $200,000 compensation. Warden Weitzell upheld the denial.

2. On July 10, 2017, Mbonyunkiza submitted grievance No. 33273 alleging that "NCF Main Kitchen Staffs have sent mixed food trays containing pork and [non-pork] without any sign indicating that there is pork on the menu." He requested investigation of kitchen staffs "who continue to abuse my faith" and appointment of a food coordinator who does not eat pork. The response stated that "the menus posted on the units and [closed circuit] Channel 50 have meals underlined that contain pork. This process was done for the date in question." Mbonyunkiza appealed, explaining that pork-free trays were placed underneath pork trays on the cart sent from the main kitchen; that pork leaked onto the pork-free food; that the cart did not have a sign indicating there was pork on the menu; and that he had complained to the unit

manager, who could not resolve the situation. Warden Weitzell denied the appeal because "the meal was posted accurately and according to our process."

3. On November 17, 2017, Mbonyunkiza submitted Grievance No. 34765 alleging that, the day before, he was served and ate "Shredded Wheat Frosted Cereal at breakfast which contains pork gelatin ingredient which is against my religion." He requested that NCF investigate and "repair the damage" caused by kitchen staff. The unit manager's response stated the grievance was partially sustained: "NCF Dietary Department was unaware that the meal in question contained pork. Having discovered this, the item will no longer be served." Mbonyunkiza appealed, requesting $400,000 "to repair my faith and belief." Warden Weitzell upheld the decision, again explaining that monetary compensation is not a grievance remedy.

4. On December 10, 2017, Mbonyunkiza submitted grievance No. 34964 alleging the main kitchen sent a lunchtime meal cart containing both pork and pork-free trays without a sign indicating pork was on the menu that warns correction officers not to serve pork trays to inmates who do not eat pork. The unit manager's response partially sustained the grievance: "You are correct the officers were not notified on the cart that there was pork on the menu. Once that was discovered, staff took action to correct the situation. . . . Non-pork eaters are also made aware of this by the pork item being underlined on the menu." Mbonyunkiza appealed, requesting that kitchen staff stop "providing us pork in hidden ways intentionally" and to "repair the damage." Warden Weitzell upheld the decision ruling, explaining that dietary staff was not withholding information intentionally and, once discovered, the mistake was corrected.

The summary judgment record established that meals at NCF are prepared in the main kitchen and transported via portable serving stations to cell houses where inmate workers serve the food. Inmates who do not eat pork are offered a non-pork alternative. Meals are planned five weeks in advance, and menus are made available

to inmates at least one week in advance through postings in the cell houses and NCF's closed-circuit television channel. Food items are underlined on the weekly menu to indicate that they contain pork. For example, the menu on July 10, 2017, underlined "Ham & Beans," with "Pork" written and underlined next to Ham & Beans. Inmates can request a meatless substitute marked "S" on the menu when pork is served. As Food Services Director at NCF, Beasley plans meals and orders food for those meals. Warden Weitzell is not personally involved in planning, preparing, or ordering food for meals.

After Mbonyunkiza filed his initial complaint *pro se*, the district court granted his motion to appoint counsel. Counsel filed a Supplemental Complaint alleging that defendants intentionally, recklessly, willfully, and maliciously -

> violated Plaintiff's Constitutional rights by providing pork or pork products in violation of Plaintiff's faith and continued to do so after being informed on several occasions products contained pork or were mixed with pork without providing sufficient notice to Plaintiff and inmates.

The district court granted summary judgment dismissing this First Amendment claim. The court concluded Mbonyunkiza did not satisfy his burden to show that defendants violated his right to free exercise of religion because four "inadvertent and isolated" incidents failed to show a "substantial burden on his . . . ability to practice his religion," citing Patel v. U.S. Bureau of Prisons, 515 F.3d 807, 813 (8th Cir. 2008).

## II. Discussion

As relevant here, the First Amendment provides that "Congress shall make no law . . . prohibiting the free exercise [of religion]." U.S. Const. amend. I. This prohibition applies to state legislatures through the Fourteenth Amendment. See Cantwell v. Connecticut, 310 U.S. 296, 303 (1940). The Free Exercise Clause

prohibits government from enacting laws, promulgating regulations, or adopting policies that "compel affirmation of religious belief, punish the expression of religious doctrines it believes to be false, impose special disabilities on the basis of religious views or religious status, or lend its power to one or the other side in controversies over religious authority or dogma." Emp't Div., Dep't of Human Res. of Or. v. Smith, 494 U.S. 872, 877 (1990) (citations omitted).

"Prison walls do not form a barrier separating prison inmates from the protections of the Constitution." Turner v. Safley, 482 U.S. 78, 84 (1987). But courts owe deference to the challenges facing prison administrators. Thus, when a prison regulation or policy impinges on an inmate's sincerely held religious beliefs, "the regulation is valid if it is reasonably related to legitimate penological interests." O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987), quoting Turner, 482 U.S. at 89. Although the Supreme Court has not addressed the issue, like most courts we have applied this standard to prison regulations that conflict with an inmate's sincerely held religious dietary beliefs. However, like other courts, we have made the standard more restrictive -- to warrant a Turner analysis of penological interests, the inmate must show the challenged regulation "substantially burdens" his sincerely held belief. Patel, 515 F.3d at 813. The substantially burdens requirement was the basis of the district court's summary judgment decision and the focus of the parties' briefs on appeal. That Mbonyunkiza's religious dietary belief is sincerely held is not at issue, and the district court did not reach the Turner analysis.

The origin of a substantially burdens requirement in § 1983 Free Exercise Clause cases is somewhat obscure. See Thomas v. Review Bd. of Ind. Employ. Sec. Div., 450 U.S. 707, 716-18 (1981). Congress incorporated the restriction in a related context, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1(a): "No government shall impose a substantial burden on the religious exercise of a person residing in [a prison] . . . ." RLUIPA's legislative history suggests that this statutory requirement is intended "to weed out false

religious claims that are actually attempts to gain special privileges or to disrupt prison life." Ochs v. Thalacker, 90 F.3d 293, 296 (8th Cir. 1996) (quotation omitted).[2] We have defined the § 1983 requirement in general terms. To substantially burden an inmate's free exercise of religion, a prison regulation -

> must significantly inhibit or constrain conduct or expression that manifests some central tenet of a person's individual religious beliefs; must meaningfully curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable opportunities to engage in those activities that are fundamental to a person's religion.

Patel, 515 F.3d at 813, quoting Murphy v. Mo. Dep't of Corr., 372 F.3d 979, 988 (8th Cir. 2004), cert. denied, 543 U.S. 991 (2004).[3]

The substantial burden test is relatively well-suited for the consideration of many § 1983 claims based on the Free Exercise Clause, such as the religious claims at issue in Weir, 114 F.3d at 819-20. But courts have struggled to define when a regulation or policy that allegedly impinges on an inmate's religious dietary belief "substantially burdens" that belief. Cf. Abdulhaseeb v. Calbone, 600 F.3d 1301, 1324-26 (10th Cir. 2010) (Gorsuch, J., concurring, discussing the somewhat different "substantially burdens" requirement in RLUIPA), cert. denied, 562 U.S. 967 (2010).

---

[2]Mbonyunkiza's Supplemental Complaint did not assert a claim under RLUIPA, no doubt because Iowa's sovereign immunity bars RLUIPA damage claims. See Sossamon v. Texas, 563 U.S. 277 (2011). This opinion considers only § 1983 claims based upon the Free Exercise Clause. For a discussion of the interplay between the two types of claims, see generally Holt v. Hobbs, 574 U.S. 352 (2015).

[3]For the most part, our Free Exercise Clause cases have declared that whether an inmate's rights were substantially burdened is a question of law. See Altman v. Minn. Dep't of Corr., 251 F.3d 1199, 1204 (8th Cir. 2001); Weir v. Nix, 114 F.3d 817, 820 (8th Cir. 1997). But there is considerable disagreement on that issue, which we need not attempt to reconcile in this case.

As the district court noted, there is extensive (but not total) agreement that an isolated, intermittent, or otherwise *de minimis* denial or interruption of an inmate's religiously required diet does not substantially burden his religious belief. See Colvin v. Caruso, 605 F.3d 282, 293-94 (6th Cir. 2010); Abdulhaseeb, 600 F.3d at 1321; Gallagher v. Shelton, 587 F.3d 1063, 1070 (10th Cir. 2009); Rapier v. Harris, 172 F.3d 999, 1006-07 n.4 (7th Cir. 1999); Watkins v. Donnelly, 551 F. App'x 953, 960-61 (10th Cir. 2014) (unpublished); Tapp v. Proto, 404 F. App'x 563, 566 (3d Cir. 2010) (unpublished); Norwood v. Strada, 249 F. App'x 269, 272 (3d Cir. 2007) (unpublished). But see Thompson v. Holm, 809 F.3d 376, 380 (7th Cir. 2016); Ford v. McGinnis, 352 F.3d 582, 591-94 (2d Cir. 2003).

We agree with the district court's interpretation and application of the substantially burdens requirement in this case. In addition, we conclude that Mbonyunkiza's Free Exercise Clause claim suffers from a more fundamental defect. The Free Exercise Clause is directed at legislative action -- "Congress shall make no law . . . prohibiting the free exercise [of religion]." See Lyng v. Nw. Indian Cemetery Protective Ass'n, 485 U.S. 439, 451 (1988) ("The crucial word in the constitutional text is 'prohibit.'"); Lovelace v. Lee, 472 F.3d 174, 201 (4th Cir. 2006). Accordingly, the Supreme Court's cases, and all the Eighth Circuit Free Exercise decisions our research has uncovered, have involved claims alleging that a statute, or a regulation or policy implementing a statute, unconstitutionally prohibited a sincerely held religious belief or otherwise unduly burdened the free exercise of religion.

By contrast, in this case NCF's food policies affirmatively accommodate the beliefs of inmates who do not eat pork for religious reasons. Mbonyunkiza does not challenge those policies. Rather, his Supplemental Complaint asserts that defendants are liable in damages because they did not properly *implement* those policies on certain occasions. The responses to his grievances confirm that, to the extent his complaints were accurate, they were the result of four inadvertent and isolated mistakes by a "kitchen staff" that served Mbonyunkiza approximately 771 meals over

the 257 days between the first and last grievances. Although he alleged in conclusory fashion that defendants did this intentionally, recklessly, and maliciously, he presented no evidence that the incidents were anything other than negligent mistakes.

"[I]n any given § 1983 suit, the plaintiff must still prove a violation of the underlying constitutional right; and depending on the right, merely negligent conduct may not be enough to state a claim." Daniels v. Williams, 474 U.S. 327, 330 (1986). In Daniels, the Court concluded "that the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property." Id. at 328 (emphasis in original). Although the decision in Daniels did not establish what state of mind must be proved to establish a Free Exercise Clause claim, Mbonyunkiza has cited no case holding that the negligent failure to implement a prison policy intended to protect inmates' free exercise of religion is actionable under § 1983. The fact that inmates are confined in the government's custody does not suggest that it is. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle v. Gamble, 429 U.S. 97, 106 (1976).

For these reasons, we conclude that, absent evidence that an underlying prison regulation or policy violates the Free Exercise Clause, evidence that a correction official negligently failed to comply with an inmate's sincerely held religious dietary beliefs does not establish a Free Exercise Clause claim under § 1983. Accord Gallagher, 587 F.3d at 1070. Therefore, the district court properly granted summary judgment dismissing Mbonyunkiza's claims. Although evidence of pervasive "mistakes" might support a claim that NCF had a *de facto* policy of ignoring or deviating from its free-exercise-compliant policies, no such evidence was presented here.

The judgment of the district court is affirmed.

_____