Cite as 2021 Ark. 162

# SUPREME COURT OF ARKANSAS

**No.** CV-20-540

|  |  |
|---|---|
| MALIK MUNTAQIM<br>                    APPELLANT<br><br>V.<br><br>DEXTER PAYNE AND WENDY KELLEY, DIRECTORS, ARKANSAS DEPARTMENT OF CORRECTION; ANTHONY JACKSON, DEPUTY WARDEN OF THE OUACHITA RIVER CORRECTIONAL UNIT; STEVE OUTLAW, DEPUTY WARDEN; CHRIS MENOTTI, SERGEANT; WILLIE MOORE, CHAPLAIN; DAN FLORA, CHAPLAIN; JAMES GIBSON, WARDEN OF THE VARNER SUPERMAX UNIT; AND VIRGINIA ALLEN, MAILROOM SUPERVISOR, ALL IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES<br>                    APPELLEES | **Opinion Delivered:** September 16, 2021<br><br>PRO SE APPEAL FROM THE HOT SPRING COUNTY CIRCUIT COURT<br>[NO. 30CV-19-271]<br><br>HONORABLE EDDY EASLEY, JUDGE<br><br><u>AFFIRMED</u>. |

**BARBARA W. WEBB, Associate Justice**

Appellant Malik Muntaqim appeals the dismissal of a pro se civil rights complaint in which he alleged that officials of the Arkansas Department of Correction (ADC) violated his constitutional rights. Muntaqim filed his complaint pursuant to Arkansas Code Annotated sections 16-123-101 et seq., known as the Arkansas Civil Rights Act of 1993 (ACRA), codified at Arkansas Code Annotated sections 16-123-101 to -108 (Repl. 2016 & Supp. 2021). Muntaqim sued the appellees in their official and individual capacities and alleged that they had violated his constitutional rights to free speech, free exercise of his

religion, access to the court, due process, and equal protection. Muntaqim further alleged that appellees violated the Establishment Clause of the First Amendment and the Religious Land Use Institutionalized Persons Act (RLUIPA).

In addition to suing Anthony Jackson, deputy warden of the Ouachita River Correctional Unit (ORCU), Muntaqim named as defendants the following officials of the ORCU: Steve Outlaw, deputy warden; Chris Menotti, sergeant; Willie Moore, chaplain; and Dan Flora, chaplain. Muntaqim also named the following officials with the Varner Supermax Unit (VSU): James Gibson, warden; and Virginia Allen, mailroom supervisor. Finally, Muntaqim sued Dexter Payne and Wendy Kelley, directors of the ADC. The circuit court granted appellees' motion to dismiss and concluded that Muntaqim's allegations had failed to raise legitimate constitutional or RLUIPA claims. Muntaqim reasserts his same grounds for relief on appeal and argues that the circuit court erred by dismissing his complaint. We disagree and affirm the circuit court's order.

I. *Background*

Muntaqim is a member of a branch of Islam known as the Nation of Islam (NOI). Muntaqim was housed at ORCU in June 2018 but was transferred to the VSU in July 2018. According to Muntaqim's complaint and the attached exhibits incorporated therein, officials with ORCU withheld multiple copies of weekly NOI publications titled *Final Call* between May and August 2018, as well as withholding one copy of the periodical in September 2017. The exhibits attached to Muntaqim's complaint include nine notifications that issues of *Final Call* were being withheld for further review due to the racist and inflammatory content in those materials. Muntaqim also alleged in his complaint that Allen, the mailroom supervisor

2

at VSU, destroyed five copies of books published by the NOI, including a book that had been approved by the ADC's Central Office Publication Review Committee. According to the complaint, the books were destroyed by Allen without notifying Muntaqim prior to their destruction in violation of ADC policy and procedures.

## II. *Standard of Review*

Our standard of review for the granting of a motion to dismiss is whether the circuit court abused its discretion. *Davis v. Kelley*, 2019 Ark. 64, 568 S.W.3d 268. An abuse of discretion occurs when the court has acted improvidently, thoughtlessly, or without due consideration. *Id.* In reviewing the circuit court's decision on a motion to dismiss under Arkansas Rule of Civil Procedure 12(b)(6), we treat the facts alleged in the complaint as true and view them in the light most favorable to the party who filed the complaint. *Bd. of Trs. of the Univ. of Ark. v. Burcham*, 2014 Ark. 61. In testing the sufficiency of the complaint on a motion to dismiss, all reasonable inferences must be resolved in favor of the complaint, and the pleadings are to be liberally construed. *Id.* However, our rules require fact pleading, and a complaint must state facts, not mere conclusions, in order to entitle the pleader to relief. *Id.* Furthermore, because sovereign immunity is jurisdictional immunity from suit, jurisdiction must be determined entirely from the pleadings. *Id.*

## III. *Sovereign Immunity*

The State has not waived sovereign immunity for claims brought under ACRA. *Smith v. Daniel*, 2014 Ark. 519, 452 S.W.3d 575. Sovereign immunity for the State of Arkansas arises from an express declaration in article 5, section 20 of the Arkansas Constitution. *See Ark. State Med. Bd. v. Byers*, 2017 Ark. 213, 521 S.W.3d 459. A suit

against the State is barred by the sovereign-immunity doctrine if a judgment for the plaintiff will operate to control the action of the State or subject the State to liability. *Id*.

The doctrine of sovereign immunity is applicable to state agencies, and this court has recognized that a suit against a public official in his or her official capacity is essentially a suit against that official's agency. *Id*. However, a claim of sovereign immunity may be surmounted if the state agency is acting illegally, and this court has long recognized that a state agency or officer may be enjoined from an action that is ultra vires. *Id*. The scope of the exception to sovereign immunity for unconstitutional acts or for acts that are ultra vires extends only to injunctive relief.

With respect to individual state actors, in determining whether state actors are entitled to statutory immunity, we have been traditionally guided by the United States Supreme Court's analysis of qualified-immunity claims. *Smith v. Brt*, 363 Ark. 126, 211 S.W.3d 485 (2005). Under this analysis, immunity is precluded when a constitutional violation is asserted and if it is demonstrated that the constitutional right has been clearly established such that the official would have known that the conduct violated that clearly established right. *Id*. Otherwise, a state official is immune from individual–capacity suits if his or her actions did not violate clearly established principles of law of which a reasonable person would have knowledge. *Id*.

Courts evaluating a claim of immunity must determine first whether the plaintiff has alleged facts that demonstrate the deprivation of an actual constitutional right and, second, that the right was clearly established at the time of the alleged violation. *Early v. Crockett*, 2014 Ark. 278, 436 S.W.3d 141. For the reasons set forth below, appellees are immune

from liability because Muntaqim failed to raise claims that demonstrate the deprivation of a constitutional right.

IV. *Constitutional Liability Under ACRA and 42 U.S.C. §1983*

Arkansas Code Annotated section 16-123-105(a) imposes liability when state officials acting under color of state law deprive persons of their rights under the Arkansas Constitution. In construing ACRA, this court may look for guidance to state and federal decisions interpreting the federal Civil Rights Act, 42 U.S.C. § 1983. *Gentry v. Robinson*, 2009 Ark. 634, 361 S.W.3d 788. As stated, Muntaqim alleged in his complaint that he was bringing the action pursuant to Arkansas Code Annotated sections 16-123-101 et seq. However, in the body of the complaint, Muntaqim alleged that appellees had violated his First Amendment rights to freedom of speech and free exercise of religion and the Establishment Clause. Muntaqim further alleged that appellees violated his Sixth Amendment right to access to the courts and his Fourteenth Amendment rights to due process and equal protection. Muntaqim's complaint makes one reference to article 2, sections 13 and 24 of the Arkansas Constitution.

The rights established and protected in the United States Constitution cited by Muntaqim are mirrored in the Arkansas Constitution. Arkansas Constitution article 2, section 6 protects freedom of speech; article 2, sections 2 and 8 protect due process; and freedom of religion is protected by article 2, section 24. Article 2, section 24 also states in pertinent part that "no preference shall ever be given, by law, to any religious establishment, denomination or mode of worship, above any other." Equal protection is established by the

5

Arkansas Constitution in article 2, sections 2, 3, and 18. Access to the courts is protected by article 2, section 13.

We have stated many times that courts must look to the substance of a pleading, and it will be interpreted according to its substance rather than its form. *Wright v. City of Little Rock*, 366 Ark. 96, 233 S.W.3d 644 (2006); *Shopfner v. Clark*, 246 Ark. 70, 436 S.W.2d 475 (1969). *See also Cornett v. Prather*, 293 Ark. 108, 737 S.W.2d 159 (1987). From a review of the substance of the complaint, it appears that Muntaqim sought relief under both federal and state laws that are based on the same constitutional rights and are analyzed under the same legal guidelines.

While Muntaqim did not reference 42 U.S.C. § 1983 in the complaint or in his argument on appeal, he relied on the United States Constitution in support of his claims under ACRA, with the exception of freedom of religion and access to the courts set forth in article 2, sections 13 and 24 of the Arkansas Constitution. Because of Muntaqim's primary reliance on the federal constitution, the circuit court treated the complaint as one filed pursuant to 42 U.S.C. § 1983. The circuit court's analysis of Muntaqim's claims under § 1983 does not affect the resolution of the issues raised in the complaint because an analysis of claims brought pursuant to ACRA is guided by the same analysis in determining the merits of a civil rights action brought under federal law. *Gentry*, 2009 Ark. 634, 361 S.W.3d 788.

V. *Claims for Relief*

A. Freedom of Speech

Muntaqim alleged in his complaint that Allen, the mailroom supervisor at VSU, violated Muntaqim's right to freedom of speech when she destroyed five NOI books without adequately notifying Muntaqim. According to Muntaqim, Allen intentionally destroyed the publications in retaliation for Muntaqim's attempts to seek redress by filing grievances and complaints concerning the ADC's restriction of his religious practices. Muntaqim further alleged that beginning in June 2018, the named appellees with ORCU and VSU conspired to systematically deny him access to religious publications, specifically including weekly publications of *Final Call*. According to Muntaqim, ORCU officials had routinely allowed him access to the weekly publication until he began filing grievances and complaints with the governor of Arkansas and the United States Department of Justice.

When a prisoner claims that he was disciplined for exercising his First Amendment rights, he must satisfy the heavy burden of showing that the prison officials who disciplined him had an impermissible motive for doing so and that, but for this impermissible motive, the disciplinary charges would not have been brought. *Kind v. Frank*, 329 F.3d 979 (8th Cir. 2003). To prevail on a claim for retaliation in violation of the First Amendment, a prisoner must demonstrate (1) that he engaged in a protected activity; (2) that the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity; and (3) that the adverse action was motivated at least in part by the exercise of the protected activity. *Santiago v. Blair*, 707 F.3d 984 (8th Cir. 2013).

7

The ordinary-firmness test is designed to weed out trivial matters from those deserving the time of the courts as real and substantial violations of the First Amendment. *Garcia v. City of Trenton*, 348 F.3d 726 (8th Cir. 2003). The ordinary-firmness test is applied in a First Amendment prisoner-retaliation context. *See Lewis v. Jacks*, 486 F.3d 1025 (8th Cir. 2007) (holding the record contained insufficient evidence that increasing the prisoner's workload would chill a prisoner of ordinary firmness from using the prison-grievance process). The ordinary-firmness test is an objective one, not subjective. *Garcia*, 348 F.3d at 729. Here, Muntaqim failed to clarify that the alleged retaliatory actions of the named appellees were of such a nature as to silence him and otherwise prevent his use of the prison-grievance procedure. In fact, the record demonstrates that Muntaqim continued to file grievances after the retaliatory actions allegedly took place.

Furthermore, to establish a viable retaliation claim, a petition must submit affirmative evidence of a retaliatory motive. *Wilson v. Northcutt*, 441 F.3d 586 (8th Cir. 2006). Muntaqim's claims that the appellees are engaged in a systemwide conspiracy to retaliate against him are entirely conclusory, and Muntaqim failed to allege facts from which a retaliatory motive could be inferred. Muntaqim did not allege that any of the named appellees were involved in, or affected by, his previous grievances and litigation, nor does Muntaqim allege that any of the appellees expressed a retaliatory animus. Instead, Muntaqim drew his own conclusions with regard to the motives of the appellees. Allegations of retaliation that are speculative and conclusory are properly dismissed. *Banks v. Jones*, 2019 Ark. 204, 575 S.W.3d 111 (Bare allegations and conclusory statements will not establish a constitutional claim.); *see also Atkinson v. Bohn*, 91 F.3d 1127 (8th Cir. 1996).

8

B. Due Process

Muntaqim alleged that the appellees had violated his right to due process when they deprived him of a liberty interest by denying him access to his religious materials without adhering to ADC procedures regarding withholding and destroying an inmate's religious publications. Specifically, Muntaqim raised the following allegations of due-process violations: (1) the notices sent to him with respect to withholding certain religious publications provided deficient explanations for the action and prohibited Muntaqim from mounting an effective appeal; (2) the notice form did not indicate that the withheld materials had been reviewed by the unit chaplain; and (3) Muntaqim was not timely notified that the decision to withhold one of the religious books published by the NOI was reversed by the ADC's central office, and that as a result of this lack of timely notice, this approved book was eventually destroyed by the VSU mailroom. Furthermore, Muntaqim alleged that Kelley was aware of the procedures regarding delivery of mail and publications to prisoners, that Allen and Gibson did not follow proper prison procedures, and that Kelley failed to take corrective action.

In order to maintain an actionable procedural due-process claim, an inmate must show that he has been deprived of some constitutionally protected liberty or property interest. *Ragan v. Lynch*, 113 F.3d 875 (8th Cir. 1997). Muntaqim raised similar allegations in a previous civil action asking for judicial review under the Administrative Procedure Act wherein he claimed a liberty interest in having ADC officials follow ADC policy. We found that prison policy and procedures do not create a liberty interest to which due process can attach. *Muntaqim v. Kelley*, 2019 Ark. 240, 581 S.W.3d 496 (*Muntaqim* II) (citing *Munson v.*

9

*Ark. Dep't of Corr.*, 375 Ark. 549, 294 S.W.3d 409 (2009) (per curiam)). Rather, any alleged liberty interest must be an interest in the nature of the prisoner's confinement, not an interest in the procedures by which the state believes it can best determine how a prisoner should be confined. *Muntaqim II*, 2019 Ark. 240; *see also Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996) (there is no federal constitutional liberty interest in having state officers follow state law or having prison officials follow prison regulations).

With respect to allegations that Kelley was liable for the violations of Muntaqim's constitutional rights by failing to properly supervise her subordinates, Kelley cannot be held vicariously liable under § 1983 for the actions of a subordinate. *Beaulieu v. Ludeman*, 690 F.3d 1017 (8th Cir. 2012). To state a claim, a prisoner must plead that the supervising official, through his or her own individual actions, violated the Constitution. *Id.* The responsibility for supervising the operation of a government facility is not sufficient to establish personal liability. *Id.* A bare allegation that someone in supervisory authority has been deliberately indifferent without any specification of that person's contact in fact with the prisoner or even an explicit charge of inadequate training or supervision of subordinates is not sufficient to state a § 1983 claim. *Id.* The same is true for claims filed pursuant to ACRA. *See Calaway v. Practice Mgmt. Servs., Inc.*, 2010 Ark. 432 (per curiam) (a supervisor is liable for his or her own unconstitutional actions).

C. Equal Protection

Muntaqim alleged that the appellees violated his right to equal protection in that other religious groups, such as Orthodox Muslims, all Christians, Jehovah's Witnesses, Wiccans, and Hebrews are allowed free access to their religious publications, while NOI

10

publications are scrutinized and withheld. Equal protection is essentially a direction that all persons similarly situated should be treated alike. *Muntaqim II*, 2019 Ark. 240. The first step in evaluating an equal-protection claim is determining whether the plaintiff has demonstrated differential treatment compared to others who were similarly situated. *Id*. Absent a threshold showing that an inmate is similarly situated to those who allegedly receive more favorable treatment, the plaintiff does not have a viable equal-protection claim. *Id*.

General verified allegations about other religious groups being treated more favorably are not sufficiently specific to support an equal-protection claim. *Murphy v. Mo. Dep't of Corr.*, 372 F.3d 979 (8th Cir. 2004). To state a viable equal-protection claim, an inmate must identify the characteristics of the class he claims to be similarly situated to and present some evidence that other groups within the class were not also restricted in similar ways. *Id*. If the inmate presents no facts to support the claim that valid prison restrictions were applied unequally, equal-protection claims fail. *Id*. Here, Muntaqim's equal-protection claims that other religious groups were treated more favorably were wholly conclusory and lacked factual support.

## D. Access to Courts

Muntaqim raised an allegation against Payne stating that Payne has interpreted ADC policy in a retaliatory and unconstitutional manner that has resulted in the denial of Muntaqim's access to the courts. The right of access to the courts is limited to the filing of an action attacking a sentence or challenging conditions of confinement. *Cody v. Weber*, 256 F.3d 764 (8th Cir. 2001). Muntaqim's allegation failed to meet this test.

E. Freedom of Religion and RLUIPA

Muntaqim alleged in his complaint that the appellees engaged in a conspiracy to systematically prohibit and remove all NOI literature and services from the ADC in violation of freedom of religion and RLUIPA. Specifically, Muntaqim averred that officials with the ORCU and VSU had withheld fourteen copies of a weekly NOI publication titled *Final Call*, dated from May 22 to August 21, 2018, and one copy of the September 18, 2017, issue. Furthermore, Muntaqim accused officials with VSU of intentionally destroying five books published by the NOI. Muntaqim alleged that officials with the ADC, as a whole, are hostile to the NOI, favor Orthodox Islam, and have conspired to ban all NOI materials, which, according to Muntaqim, are essential to the practice of his faith. However, Muntaqim made no allegations that the appellees instituted a total ban on NOI publications. Rather he referred only to the withholding of fifteen publications of a weekly newsletter over a two-year period and that five books published by the NOI were destroyed by the VSU mailroom supervisor.

Attached to Muntaqim's complaint were nine notices sent to Muntaqim regarding *Final Call* publications indicating that the publications were withheld due to racist and inflammatory content. Muntaqim also attached a notice sent to him by the VSU mailroom advising him that the five books would be destroyed if Muntaqim failed to pay for the costs of returning the publications to the sender. Muntaqim stated he never received the notice regarding the five books that were eventually destroyed. Muntaqim alleged that ADC's policies and practices imposed a substantial burden on his sincerely held religious beliefs by

denying him access to materials essential to his study of NOI doctrine in violation of the First Amendment and RLUIPA.

When a prison regulation or policy impinges on an inmate's sincerely held religious beliefs, the regulation is constitutionally valid if it is reasonably related to legitimate penological interests. *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987). Muntaqim previously challenged ADC policy with respect to incoming NOI publications and sought to enjoin the ADC's mailroom policy to ensure that he received all NOI materials regardless of content. The circuit court denied Muntaqim's request for an injunction and we affirmed. *Muntaqim v. Lay*, 2019 Ark. 203, 575 S.W.3d 542 (*Muntaqim I*). We held that because the mail policy is designed to promote the legitimate penological interests of prison safety and security and requires individualized review of all incoming mail, the policy was not unconstitutional and subject to an injunction. *Id.* Here, the ADC actions were again based on a legitimate penological interest and were withheld for review after an individualized review determined that the materials contained racist and inflammatory content.

The Eighth Circuit Court of Appeals and other federal circuits have applied the standards set forth by the United States Supreme Court regarding the free exercise of an inmate's religious practices in a more restrictive manner. *Mbonyunkiza v. Beasley*, 956 F.3d 1048 (8th Cir. 2020). Accordingly, to warrant an analysis of penological interest with respect to prison regulations that limit religious practices, the inmate must show the challenged regulation "substantially burdens" his sincerely held belief. *Id.* To substantially burden an inmate's free exercise of religion, a prison regulation must significantly inhibit or constrain conduct or expression that manifests some central tenet of a person's individual religious

beliefs; must meaningfully curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable opportunities to engage in those activities that are fundamental to a person's religion. *Id*. Muntaqim's allegations that the appellees withheld and/or destroyed fifteen copies of a weekly publication along with five NOI books does not meet the "substantially burdens" standard outlined by the Eighth Circuit. Muntaqim did not allege a total ban on all NOI materials and essentially contended that he was denied access to fourteen periodicals out of fifty-two weekly periodicals issued in 2018 and was denied access to one copy of the periodical in 2017. Alleging the destruction of five books published by NOI likewise failed to state a claim that the conduct of the mailroom supervisor at VSU substantially burdened Muntaqim's religious practices. Muntaqim has not been denied a reasonable opportunity to engage in a fundamental religious practice of reading materials and instructions related to his faith. In fact, Muntaqim admits in his appellate brief that he is currently receiving *Final Call* periodicals and other books published by the NOI. Finally, outside Muntaqim's conclusory allegations, he failed to demonstrate that receipt and the study of all NOI publications is a central tenet of NOI religious practices.

The "substantially burdens" standard applied by the Eighth Circuit is partially based on the language incorporated in RLUIPA. Section 3 of RLUIPA provides in pertinent part that "[n]o government shall impose a substantial burden on the religious exercise" of an institutionalized person unless the government demonstrates that the burden "is the least restrictive means of furthering [a] compelling governmental interest." 42 U.S.C. § 2000cc-1(a). RLUIPA's legislative history suggests that this statutory requirement was

14

intended "to weed out false religious claims that are actually attempts to gain special privileges or to disrupt prison life." *See Ochs v. Thalacker*, 90 F.3d 293, 296 (8th Cir. 1996).

Under RLUIPA, a substantial burden exists if the prison policy significantly inhibits or constrains religious conduct, meaningfully curtails an inmate's ability to express adherence to his faith or denies an inmate a reasonable opportunity to engage in fundamental religious activities. *See Van Wyhe v. Reisch*, 581 F.3d 639 (8th Cir. 2009). RLUIPA "defines 'religious exercise' to include 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief.'" *Id*. at 655 (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 715 (2005)). Under RLUIPA, once a prisoner makes a showing that a religious exercise has been substantially burdened by prison policy, the burden shifts to the government to demonstrate that the prison policy is the least restrictive means of achieving a compelling government interest. *Id*. (citing 42 U.S.C. § 2000cc-1(a)(1)–(2)). The prison must permit a reasonable opportunity for an inmate to engage in religious activities but need not provide unlimited opportunities to do so. *Id*. Muntaqim's claims that the appellees restricted access to some but not all NOI religious literature did not state sufficient facts that appellees placed a substantial burden on the exercise of his religious practices. While Muntaqim was not required to plead that the receipt and study of all NOI publications are a central tenet of his religious practices under RLUIPA, denial of a fraction of NOI religious-study materials does not substantially burden religious practices under RLUIPA. *Id*. In sum, the ADC was not required to provide Muntaqim with unlimited access to NOI publications under the First Amendment of the United States Constitution, article 2 of the Arkansas Constitution, or RLUIPA.

## F. Establishment Clause

Finally, Muntaqim alleged that by denying him access to some of his NOI religious materials and by allowing other religious groups access to their religious publications, appellees have violated the Establishment Clause of the First Amendment. The test for raising a valid Establishment Clause claim is set forth in *Lemon v. Kurtzman*, 403 U.S. 602 (1971), which provides that the government action does not violate the Establishment Clause if it has a secular purpose, does not have a primary effect of advancing or inhibiting religion, and does not result in excessive entanglement with religion. *Murphy*, 372 F.3d 979. Muntaqim's allegations failed to meet the test for raising a valid Establishment Clause claim.

Because Muntaqim failed to state constitutional claims under either the federal or the state constitution and otherwise failed to demonstrate that the appellees acted "ultra vires," appellees are immune from liability. The circuit court did not abuse its discretion when it dismissed Muntaqim's complaint.

Affirmed.

BAKER, J., concurs.

WOOD, J., concurs in part without opinion.