# United States Court of Appeals

### For the Eighth Circuit

_____

No. 13-3237

_____

Corey Sanders

*Plaintiff - Appellee*

v.

Artis Ray Hobbs, Director, Arkansas Department of Correction; James Gibson, Chief of Operations, Arkansas Department of Correction; Grant Harris, Assistant Director, Arkansas Department of Correction; Sherry Conrad, Mailroom Supervisor, Varner Unit, ADC; John Whaley, Deputy Warden, Varner Unit, ADC

*Defendant*s

Joe Page, III

*Defendant - Appellant*

Curtis Gibson, III, Chief of Security, Varner Unit, ADC

*Defendant*

_____

No. 13-3485

_____

Corey Sanders

*Plaintiff - Appellant*

v.

Artis Ray Hobbs, Director, Arkansas Department of Correction; James Gibson, Chief of Operations, Arkansas Department of Correction; Grant Harris, Assistant Director, Arkansas Department of Correction; Sherry Conrad, Mailroom Supervisor, Varner Unit, ADC; John Whaley, Deputy Warden, Varner Unit, ADC

*Defendant*s

Joe Page, III, Captain, Varner Unit, ADC

*Defendant - Appellee*

Curtis Gibson, III, Chief of Security, Varner Unit, ADC

*Defendant*

_____

Appeals from United States District Court
for the Eastern District of Arkansas - Pine Bluff

_____

Submitted: September 10, 2014
Filed: December 4, 2014

_____

Before BYE, COLLOTON, and GRUENDER, Circuit Judges.

_____

BYE, Circuit Judge.

Corey Brian Sanders brought this retaliatory-discipline suit under 42 U.S.C. § 1983, alleging Arkansas Department of Correction ("ADC") correctional officer[1] Joe Page, III, filed a disciplinary charge against him in retaliation for the prison

_____

[1]At the time of the events in this lawsuit, Page was a Captain at the ADC; he is now the Deputy Warden.

grievances Sanders filed against Page. The district court denied Page's motions for judgment as a matter of law, and a jury found in favor of Sanders, awarding him $1 in nominal damages. Page argues he is entitled to judgment as a matter of law, there is insufficient evidence to support the jury's verdict, and the district court erred in granting injunctive relief. Sanders cross-appeals and argues he is entitled to additional attorneys' fees beyond the $1.50 the district court awarded. Because the district court erred in denying Page's motion for judgment as a matter of law, we reverse and remand with instructions to dismiss Sanders's claim, rendering all remaining issues moot.

I

In 2009, Sanders assisted another inmate by writing a complaint letter to government officials outside the ADC, asserting that Page violated ADC policy in accepting a pair of ostrich-skin shoes made by the other inmate. Sanders testified at trial that Page provided him with favorable treatment and favors in an attempt to convince Sanders to dismiss the complaint. Although Sanders withdrew the letter of complaint, on August 5, 2009, he filed two grievances against Page through the ADC grievance process, alleging Page improperly coerced him to withdraw his prior complaint. On August 12, 2009, Sanders filed a third grievance against Page, in which he asserted Page improperly discussed with another inmate the "grave fabrication" that Sanders possessed a cell phone.

On August 14, 2009, several correctional officers, including Page, entered the barracks (an open room with a partition and approximately fifty bunks) where Sanders was housed to conduct a "shake down" (a search for contraband). During the search, the officers uncovered a cell phone in the bunk of inmate Albert Gonzales, which was on the opposite side of the partition and the farthest corner from Sanders's bunk. Sanders testified he saw Page smile at him when the cell phone was found. According to Sanders, the next morning, Major Curtis Gibson, the chief security

officer for Sanders's unit, warned Sanders that Page was going to file a disciplinary charge against him, unless he withdrew his prior grievances. Indeed, on August 19, 2009, Page filed a disciplinary charge against Sanders and another inmate charging them with the use of a cell phone in violation of ADC policy.

Less than ten days later, Sanders appeared at a disciplinary hearing on the charge before hearing officer Minnie Drayer. The hearing lasted twelve minutes, during which Drayer read the charge to Sanders and Sanders denied the charge. Page did not attend the hearing and Drayer never interviewed him. The evidence Drayer considered included: (1) the disciplinary charge and Page's accompanying report; (2) a photocopy picture of the cell phone; (3) a "401" chain of custody form; (4) the statement of Gibson that he did not witness the incident; and (5) copies of three letters sent to Sanders by a woman outside the ADC. After considering the evidence, Drayer accepted Page's report and found Sanders guilty of the charged violation. As a result, among other things, Sanders lost his phone, visitation, and commissary privileges for sixty days, lost his job as a hall porter, and spent thirty days on punitive isolation. Drayer's decision was upheld on appeal through the ADC review process.

Sanders then filed this § 1983 action. After the district court appointed him counsel, Sanders filed an amended complaint with only one claim, alleging Page filed the disciplinary charge in retaliation for Sanders's grievances against Page. Sanders sought nominal, compensatory, and punitive damages and the removal of the disciplinary charge from his record. In May 2013, the district court held a two-day jury trial on the retaliatory-discipline claim. Page made a motion for judgment as a matter of law at the close of Sanders's case-in-chief and at the close of all the evidence. The court denied both motions, and ultimately, the jury found in favor of Sanders, awarding him $1 in nominal damages. After the court entered judgment on the verdict, Page again made a motion for judgment as a matter of law. Sanders filed a motion for declaratory and injunctive relief, requesting the disciplinary charge be removed from his record. On September 17, 2013, the court denied Page's motion,

-4-

granted Sanders's motion, and awarded Sanders $1.50 in attorneys' fees. Thereafter, Sanders filed a second motion for attorneys' fees, which the court denied.

II

We review a district court's denial of a motion for judgment as a matter of law *de novo* and consider the evidence in the light most favorable to the verdict, giving the prevailing party the benefit of all reasonable inferences. See Russell v. Whirlpool Corp., 702 F.3d 450, 458 (8th Cir. 2012). We do not "judge the credibility of the witnesses or weigh the evidence" and the jury's verdict will not be set aside, "unless there is a complete absence of probative facts to support the verdict." Conseco Fin. Servicing Corp. v. N. Am. Mortg. Co., 381 F.3d 811, 818 (8th Cir. 2004). To reverse, we must find that "no reasonable juror could have returned a verdict for the non-moving party." Ryther v. KARE 11, 108 F.3d 832, 836 (8th Cir. 1997).

An inmate has a viable § 1983 claim where a prison official files a disciplinary charge in retaliation for the inmate's exercise of his constitutional rights. See, e.g., Hartsfield v. Nichols, 511 F.3d 826, 829 (8th Cir. 2008). But as we have previously held, "claims of retaliation fail if the alleged retaliatory conduct violations were issued for the actual violation of a prison rule." Id. As such, "a defendant may successfully defend a retaliatory discipline claim by showing 'some evidence' the inmate actually committed a rule violation." Hartsfield, 511 F.3d at 829. "[A] report from a correctional officer, even if disputed by the inmate and supported by no other evidence, *legally* suffices as 'some evidence' upon which to base a prison disciplinary violation, if the violation is found by an impartial decisionmaker." Id. at 831 (emphasis added). Thus, when there is a disciplinary decision affirming the charge, the "critical inquiry 'is not whether the prisoner alleges that prison officials retaliated against him for participating in constitutionally protected activity, but instead is whether the prison disciplinary committee ultimately found based upon some evidence that the prisoner committed the charged violation of the prison regulations.'"

Cornell v. Woods, 69 F.3d 1383, 1389 (8th Cir. 1995) (quoting Henderson v. Baird, 29 F.3d 464, 469 (8th Cir. 1994)).  If the disciplinary decision is supported by "some evidence," the filing of the charge may not be the basis for a retaliatory-discipline claim.  See, e.g., Santiago v. Blair, 707 F.3d 984, 993 (8th Cir. 2013); Moore v. Plaster, 266 F.3d 928, 931 (8th Cir. 2001); Henderson, 29 F.3d at 469 (holding that a disciplinary decision affirming a charge "checkmates [a] retaliation claim"); Tatum v. Harmon, 402 F. App'x 158, 159-60 (8th Cir. 2010).

The Supreme Court has characterized the "some evidence" standard as follows:

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.  Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

Superintendent v. Hill, 472 U.S. 445, 455-56 (1985).

Here, there is "some evidence" to support Drayer's disciplinary decision.  First, Page filed a report based on his investigation linking Sanders to the cell phone, which alone may constitute "some evidence" to support a disciplinary decision.  See Hartsfield, 511 F.3d at 831.  Second, the cell phone was found in Sanders's barracks. While the cell phone was not specifically found in Sanders's bunk, it still supports Drayer's decision, particularly in light of the fact Sanders was already aware Page suspected he had a cell phone prior to the shake down and could have hidden it elsewhere.  Finally, upon a routine mail screening, the mailroom supervisor, Sheri Conrad, discovered that letters sent to Sanders included detailed comments demonstrating Sanders had a cell phone and had used it to text and call the author of the letters.

Sanders raises three arguments for why the disciplinary decision cannot constitute "some evidence" of the violation, all of which we find to be without merit. First, Sanders argues the decision was not based on the testimony of "wholly disinterested witnesses." But in reviewing "whether the 'some evidence' standard has been satisfied, [we] are not to make an independent assessment of the credibility of witnesses or weigh the evidence." Goff v. Burton, 91 F.3d 1188, 1192 (8th Cir. 1996). The mere fact the witnesses are correctional officers does not undermine their credibility or trustworthiness–these are issues the disciplinary hearing officer is entitled to consider and weigh. Second, Sanders argues the letters sent to Sanders and relied upon by Drayer were "highly suspect." Yet, the letters identified the author and included specific details about communications with Sanders; they are, therefore, unlike unreliable, general confidential informant testimony we have previously noted may be "evidence which common sense and experience suggest [are] incredible." Id. at 1192. Moreover, the letters were not the only evidence of the violation. Finally, Sanders asserts the disciplinary hearing failed to satisfy the requirements of Wolff v. McDonnell, 418 U.S. 539 (1974). Under Wolff, "an inmate is entitled (1) to advance written notice of the claimed violation at least 24 hours before the disciplinary hearing; (2) to call witnesses and to present documentary evidence in his defense if doing so will not jeopardize institutional safety or correctional goals; and (3) to receive a written statement from an impartial decisionmaker identifying the evidence relied on and the reasons for the disciplinary action." Hrbek v. Nix, 12 F.3d 777, 780 (8th Cir. 1993). We find all three requirements were met: Sanders received notice of the violation more than a week in advance of the hearing, he does not identify any witnesses or evidence he was denied the opportunity to present, and he received a copy of the disciplinary decision.[2]

_____

[2]Sanders appears to also argue he was not given notice of the letters and was not allowed to review them during the hearing. In dismissing a similar argument, one of our sister courts has noted that "[n]otably absent from the Wolff list of due process rights is a prisoner's right to review all potentially inculpatory evidence prior to the disciplinary hearing." Lasko v. Holt, 334 F. App'x 474, 476 (3d Cir. 2009); see also

Because there is "some evidence" to support Drayer's decision affirming the charge against Sanders, there is also "some evidence" Sanders committed the charged violation. Therefore, we find Sanders's retaliatory-discipline claim fails as a matter of law and the district court erred in denying Page's motion for judgment as a matter of law.

III

Accordingly, we reverse the decision of the district court and remand with directions to dismiss the complaint. Because we find Sanders's claim fails as a matter of law, we also vacate the district court's order granting injunctive relief and attorneys' fees.

_____

---

McMahon v. Tamez, 409 F. App'x 752, 753 (5th Cir. 2011) (noting that prisoner's due process rights were not violated even though prisoner did not know of a memorandum and email until he received the disciplinary decision). Because evidence other than the letters exists to support the disciplinary decision, in the context of this case, we need not address the lack of advance notice with regard to the letters. Cf. Espinoza v. Peterson, 283 F.3d 949, 952 (8th Cir. 2002).