Cite as 2024 Ark. App. 455

# ARKANSAS COURT OF APPEALS

DIVISION II

No. CV-22-447

| | |
|---|---|
| MALIK MUNTAQIM, ADC NO. 088633<br>APPELLANT<br><br>V.<br><br>DEXTER PAYNE, DIRECTOR,<br>ARKANSAS DIVISION OF<br>CORRECTION; RAYMOND NAYLOR,<br>DISCIPLINARY HEARING<br>ADMINISTRATOR, ARKANSAS<br>DIVISION OF CORRECTION; JAMES<br>GIBSON, WARDEN, VARNER UNIT,<br>ARKANSAS DIVISION OF<br>CORRECTION; MICHAEL<br>RICHARDSON, BUILDING MAJOR,<br>VARNER UNIT, ARKANSAS DIVISION<br>OF CORRECTION; TARRELL<br>MCEWEN, LIEUTENANT, VARNER<br>UNIT, ARKANSAS DIVISION OF<br>CORRECTION; LAWRENCE<br>GOODLOE, SARGEANT, VARNER<br>UNIT, ARKANSAS DIVISION OF<br>CORRECTION; AND JUSTINE<br>MINOR, DISCIPLINARY HEARING<br>OFFICER, ARKANSAS DIVISION OF<br>CORRECTION<br>APPELLEES | Opinion Delivered September 25, 2024<br><br>APPEAL FROM THE LINCOLN<br>COUNTY CIRCUIT COURT<br>[NO. 40CV-21-78]<br><br>HONORABLE JODI RAINES DENNIS,<br>JUDGE<br><br><br><br>AFFIRMED AS MODIFIED |

**WENDY SCHOLTENS WOOD, Judge**

Appellant Malik Muntaqim filed a pro se civil-rights complaint in the Lincoln County

Circuit Court against the following employees of the Arkansas Division of Correction (ADC)

in their official and individual capacities: Dexter Payne, director of the ADC; Raymond Naylor, disciplinary hearing administrator, ADC; James Gibson, warden, Varner Supermax Unit (VSM); Michael Richardson, building major, VSM; Tarrell McEwen, lieutenant, VSM; Lawrence Goodloe, sergeant, VSM; and Justine Minor, disciplinary hearing officer, ADC. In his complaint, Muntaqim alleged that appellees violated his constitutional rights while he was in the VSM and requested nominal, compensatory, and punitive damages.[1] Appellees filed a motion to dismiss, which was granted by the circuit court. On appeal, Muntaqim argues that the circuit court abused its discretion in dismissing his complaint. Alternatively, he submits that, even if dismissal was proper, his case should be remanded for the entry of an order of dismissal without prejudice. We affirm the circuit court's order of dismissal as modified.

## I. *Jurisdiction*

Before reaching the merits of Muntaqim's appeal, we address a jurisdictional issue raised by appellees. Appellees argue that we lack jurisdiction because Muntaqim's notice of

---

[1]In his complaint, Muntaqim cites for jurisdictional purposes the Arkansas Civil Rights Act, which imposes liability when state officials acting under color of state law deprive persons of their rights under the Arkansas Constitution. *See* Ark. Code Ann. § 16-123-105(a) (Repl. 2016). However, all the claims Muntaqim asserts in his complaint allege deprivations of rights under the United States Constitution, which can be enforced in either federal or state court under 42 U.S.C. § 1983. *Newton v. Etoch*, 332 Ark. 325, 334, 965 S.W.2d 96, 100 (1998); *see also Virden v. Roper*, 302 Ark. 125, 128, 788 S.W.2d 470, 472 (1990) (stating that "[w]hile it remains unsettled whether it is obligatory upon state courts to exercise such jurisdiction, the state court option to assume jurisdiction over § 1983 cases is routinely exercised.").

appeal is fatally defective for the following reasons: (1) it failed to state whether the appeal is to the Arkansas Supreme Court or the Arkansas Court of Appeals, in violation of Rule 3(e)(v) of the Arkansas Rules of Appellate Procedure–Civil; (2) it failed to state that Muntaqim abandons any pending but unresolved claims, in violation of Rule 3(e)(vi); and (3) it failed to designate the contents of the record on appeal, in violation of Rule 3(e)(iii). We disagree.

While the filing of a notice of appeal is jurisdictional, our supreme court has required only substantial compliance with the procedural steps set forth in Rule 3(e), provided that the appellee has not been prejudiced by the failure to comply strictly with the rule. *Evins v. Carvin*, 2013 Ark. App. 185, at 4, 426 S.W.3d 549, 552 (citing *Duncan v. Duncan*, 2009 Ark. 565, at 4). After reviewing the notice of appeal filed by Muntaqim, we hold that Muntaqim substantially complied with Rule 3(e) and that appellees have not been prejudiced by any failure to strictly comply with the rule.

Muntaqim's notice, which was timely filed, specified the party taking the appeal and designated the June 21, 2022 order of dismissal from which Muntaqim appealed, in compliance with Rule 3(e)(i) & (ii). The requirement that a notice "state whether the appeal is to the Court of Appeals or to the Supreme Court" merely serves "the purpose of placing the case with one court or the other for preliminary administration."[2] Ark. R. App. P.–Civ. 3(e)(v). Appellees, moreover, suffered no prejudice from the omission of a statement abandoning any pending but unresolved claims because there were no pending but

[2]This case was preliminarily placed with the supreme court and subsequently transferred to this court.

3

unresolved claims; all of Muntaqim's claims were dismissed with prejudice by way of the circuit court's June 21, 2022 order of dismissal. *See Evins*, 2013 Ark. App. 185, at 4, 426 S.W.3d at 552–53. Further, while Muntaqim's notice did not expressly designate the contents of the record on appeal, it did include a procedural summary, listing pertinent pleadings, orders, and other documents with the relevant dates of filing. *See Rogers v. Tudor Ins. Co.*, 325 Ark. 226, 231, 925 S.W.2d 395, 398 (1996) (noting a line of cases in which the court "has examined situations where language was omitted from the notice of appeal about the designation of the record even though the requirements of the rule were actually met"). For these reasons, we reject appellees' jurisdictional argument and address the merits of Muntaqim's appeal.

## II.  *Standard of Review*

When reviewing a circuit court's decision on a motion to dismiss under Arkansas Rule of Civil Procedure 12(b)(6), we treat the facts alleged in the complaint as true and view them in the light most favorable to the plaintiff. *Muntaqim v. Kelley*, 2022 Ark. App. 76, at 2, 641 S.W.3d 35, 40. All reasonable inferences are resolved in favor of the complaint, and the pleadings are liberally construed. *Id*. Under our fact-pleading requirement, a complaint must state facts, not mere conclusions, to entitle the pleader to relief. *Id.*  We review a circuit court's decision to grant a motion to dismiss for abuse of discretion. *Id*. But whether a party is immune from suit is purely a question of law and is reviewed de novo. *Banks v. Jones*, 2019 Ark. 204, at 3, 575 S.W.3d 111, 114.

## III.  *Procedural and Factual Background*

4

From a review of the complaint and the exhibits attached and incorporated into the complaint, Muntaqim's civil-rights action is based on the following alleged facts. A major disciplinary violation was issued against Muntaqim for possession of contraband in connection with an incident that occurred on July 11, 2019. The circumstances of this incident are described in a report written by separate appellee Lawrence Goodloe:

> On July 11, 2019, at approx. 1:00 pm, I Sgt. L. Goodloe while working Sally Port (Zone 4) received Inmates Thompson, Tyren #148993 and Muntaqim, Malik A. #88633 from Hot Spring County. They were dropped off by Hot Spring County Deputy Edward Benway. When the inmates exited Deputy Benway's vehicle, they both had clear bags of Top Ramen Noodles in their possession. Inmate Thompson, Tyren #148993 had a total of 25 noodles in his possession and Inmate Muntaqim, Malik A. #88663 had a total of 17 noodles in his possession. I Sgt. L. Goodloe then informed the inmates that nothing outside the unit will be allowed and that the noodles would be confiscated. Inmate Thompson, Tyren #148993 then stated that there would be a problem if I took his noodles. I then told Thompson, Tyren #148993 that it was against ADC policy to return from court with anything. I Sgt. L. Goodloe then searched the packages and noticed that the noodle packs had been tampered with. I then notified my supervisor Lt. McEwen. The noodles were then tested with the Nark II onsite test kit, and they tested positive for methamphetamine. Confiscation forms were written, photos were taken, and chain of custody forms were filled out. Internal Affairs Administrator Raymond [Naylor], Deputy Director Dexter Payne, and the Arkansas State Police were notified. The contraband was turned over to SA Randy Rauls of the Arkansas State Police. Inmate Muntaqim, Malik A. #88633 knows that bringing contraband into the unit is against ADC rules and regulations. Therefore, I Sgt. Goodloe am charging Inmate Muntaqim, Malik A. #88633 with the following rule violations 9-3 and 12-3.[3]

---

[3]The ADC "Major Disciplinary" form states that rule violation 09-3 is possession/introduction/manufacture of any drug, narcotic, intoxicant, tobacco, chemical, or drug paraphernalia not prescribed by medical staff; and rule violation 12-3 is failure to obey verbal and/or written order(s) of staff.

5

Muntaqim was notified of these charges on July 16.

On July 17, a disciplinary hearing was held at which Muntaqim denied the charges and made the following statement on his own behalf: "I did not have nothing[.] I know better than to try and bring back anything when I go out to court[.]" After reviewing the evidence, the disciplinary hearing officer, separate appellee Justine Minor, found Muntaqim guilty of rule violation 09-3 and not guilty of rule violation 12-3. An ADC "Disciplinary Hearing Action" form indicates that the factual basis for the disciplinary decision was that "[Muntaqim] was found in possession of several packages of noodles that tested positive for methamphetamine" and that the following evidence was relied on: (1) a Form 005 report from staff that supported the Form F-1 incident report; (2) the charging officer's statement on the Form F-1 incident report; (3) a photograph of the evidence; (4) an F-401 confiscated-property form for the seized contraband; (5) a chain-of-custody receipt; (6) a witness statement; and (7) a supporting Form 005 report. Minor assessed the following punishment: (1) loss of phone, visitation, and commissary privileges for sixty days; (2) thirty days' punitive isolation; and (3) a good-time classification reduction from Class III to Class IV. In his complaint, Muntaqim alleged that his VSM incentive program level also was reduced due to the finding of guilt for this major disciplinary violation.

The same day, Muntaqim appealed the disciplinary decision to the VSM warden, separate appellee James Gibson. In his disciplinary appeal, Muntaqim alleged that both Goodloe and Minor had failed to comply with ADC policies, rules, and regulations in charging him with, and finding him guilty of, the violation of possession of contraband.

Gibson affirmed the disciplinary decision on July 25, 2019. On August 5, Muntaqim appealed to the disciplinary hearing administrator, separate appellee Raymond Naylor. Naylor affirmed the disciplinary decision on October 2.

Muntaqim next appealed to the ADC director, separate appellee Dexter Payne. Payne initially upheld the disciplinary decision on November 6, 2019. On November 7, Muntaqim was notified that Payne's office had received and reviewed correspondence concerning the July 11 disciplinary violation. On December 13, Payne issued a revised memorandum stating that "[u]pon receiving additional information," he was "reversing the guilty verdict of rule violation 09-3 Possession/Introduction/manufacture of any drug, narcotic, intoxicant, tobacco, chemical, or drug paraphernalia not prescribed by medical staff to read not guilty; therefore, your request to reverse your disciplinary is granted."

During the pendency of his disciplinary appeal, Muntaqim also filed grievances against separate appellees Goodloe, Minor, Gibson, Richardson, and McEwen. On July 24, Muntaqim filed a grievance alleging that Goodloe had failed to comply with ADC rules and regulations with respect to the "F-401" confiscated-property form regarding the seized packages of ramen noodles. This grievance was rejected as a nongrievable disciplinary matter. On August 1, Muntaqim appealed the grievance rejection to Payne. On August 22, Payne denied Muntaqim's grievance appeal on the same basis.

Also in July 2019, Muntaqim filed a grievance against Gibson regarding his investigation of Muntaqim's previous allegations against Goodloe and Minor for failing to follow ADC polices, rules, and regulations with respect to the disciplinary violation for

7

possession of contraband. On August 6, Payne denied Muntaqim's grievance appeal on the basis that it involved a nongrievable disciplinary matter.

On October 22, 2019, Muntaqim filed a grievance against Richardson, McEwen, Goodloe, and Gibson "for falsifying state reports, retaliatory discipline, [and] denial of due process and equal protection." In this grievance, Muntaqim stated that, on October 14, 2019, he had received a copy of an Arkansas State Crime Laboratory drug-analysis report dated August 20, 2019, which indicated that "no controlled substance was detected" in the confiscated packages of ramen noodles. Muntaqim alleged in the grievance that, in retaliation for his previously filed grievances and lawsuits, Goodloe had written a false disciplinary report against him, McEwen had produced false drug results, Richardson had failed to properly investigate the disciplinary report, and Gibson had failed to properly investigate his disciplinary appeal. On November 14, 2019, the ADC chief deputy director denied Muntaqim's grievance appeal on the basis that it involved a nongrievable disciplinary matter.

On July 9, 2021, Muntaqim filed the instant civil-rights action. In his complaint, Muntaqim claimed that appellees violated his "First Amendment right to petition the government for a redress of grievances by retaliating against [him] with a false disciplinary report." He alleged specifically that the major disciplinary violation for possession of contraband was motivated by retaliation for the multiple grievances and lawsuits he had filed against appellees and other ADC officials. He also claimed that appellees violated his "Fourteenth Amendment right of Due Process by convicting [him] of a false disciplinary with

8

absolutely no real evidence and denying [him] Equal Protection of laws." These claims are based on allegations that appellees failed to properly follow ADC policies, rules, and regulations in the following ways: (1) Goodloe wrote a false disciplinary report; (2) McEwen falsified the Nark II field-test results and did not properly sign and deliver the property-confiscation form for the seized packages of ramen noodles; (3) Richardson did not properly screen the major disciplinary report; (4) Minor did not sufficiently describe the evidence relied on in the disciplinary-hearing action; and (5) Gibson, Naylor, and Payne were made aware of the state crime lab's August 2019 drug-analysis report but declined to reverse his disciplinary conviction for the contraband-possession violation until December 2019. Muntaqim further alleged that, as a collateral consequence of the disciplinary action, his VSM incentive program level was reduced, thereby potentially extending his time in a program that imposes atypical conditions of confinement.

On November 12, 2021, appellees filed a motion to dismiss. As to Muntaqim's retaliation claim, they argued that Muntaqim's "broad and conclusory allegations . . . regarding the alleged conspiracy to retaliate against him are nothing more than speculation which is insufficient to successfully plead a cause of action." They further argued that Muntaqim's due-process and equal-protection claims involving the ADC disciplinary process and ADC officials' implementation of ADC policies, rules, and regulations failed to state a constitutional question sufficient to raise a liberty interest and failed to state facts to support a claim that Muntaqim was treated differently in the disciplinary process than any similarly situated prisoner. In addition, appellees asserted that they were entitled to immunity from

suit and that Muntaqim's claims were subject to dismissal for failure to exhaust administrative remedies. On June 21, 2022, the circuit court granted appellees' motion and entered an order of dismissal with prejudice. The court also found that the dismissal constituted a strike pursuant to Arkansas Code Annotated section 16-68-607 (Supp. 2021).

IV. *Sovereign and Qualified Immunity*

Sovereign immunity for the State of Arkansas arises from an express declaration in article 5, section 20 of the Arkansas Constitution. *Muntaqim*, 2022 Ark. App. 76, at 6, 641 S.W.3d at 42. A suit against the State is barred by the sovereign-immunity doctrine if a judgment for the plaintiff will operate to control the action of the State or subject the State to liability. *Id.*, 641 S.W.3d at 42. Because sovereign immunity is jurisdictional immunity from suit, jurisdiction must be determined entirely from the pleadings. *Id.* at 2, 641 S.W.3d at 40. When the pleadings show that the action is one against the State, the circuit court acquires no jurisdiction. *Swanigan v. Ark. Dep't of Corr.*, 2014 Ark. 196, at 2. In determining whether sovereign immunity applies, the decisive question is whether a judgment for the plaintiff will operate to control the action of the State or subject the State to liability. *Fegans v. Norris*, 351 Ark. 200, 206, 89 S.W.3d 919, 924 (2002) (per curiam). If so, the suit is one against the State and is barred by the doctrine of sovereign immunity. *Id.*, 89 S.W.3d at 924.

The sovereign-immunity doctrine applies to state agencies and state employees sued in their official capacities.[4] *Muntaqim*, 2022 Ark. App. 76, at 7, 641 S.W.3d at 42. This is because a suit against a state employee in his or her official capacity is essentially a suit against that official's agency and, as such, is no different than a suit against the State itself. *Id.* at 7, 641 S.W.3d at 42. A claim of sovereign immunity may be surmounted, however, if the state agency is acting illegally, and this court has long recognized that a state agency or officer may be enjoined from an action that is ultra vires. *Id.* at 7, 641 S.W.3d at 42. But the scope of these limited exceptions to sovereign immunity extends only to injunctive relief. *Id.*, 641 S.W.3d at 42.

Muntaqim's civil-rights claims for money damages against appellees in their official capacities are claims against the State and are therefore barred by the doctrine of sovereign immunity. *See id.* at 8, 641 S.W.3d at 43. Accordingly, we hold that the circuit court did not err in dismissing Muntaqim's official-capacity claims.

In determining whether appellees are entitled to immunity in their individual capacities, we are guided by the United States Supreme Court's analysis of qualified-immunity claims. *Id.* at 7, 641 S.W.3d at 42. Under this analysis, a state official is entitled to qualified immunity unless (1) the plaintiff has alleged facts that demonstrate the deprivation of an actual constitutional right, and (2) the right was clearly established at the time of the

---

[4]While the circuit court construed Muntaqim's complaint as raising claims against appellees only in their individual capacities, we note that Muntaqim alleged in his complaint that he was suing appellees in both their official and individual capacities.

11

alleged violation such that a reasonable official would have known that his actions were unlawful. *Id.*, 641 S.W.3d at 42. Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

For the reasons set forth below, we hold that appellees are entitled to immunity in their individual capacities because Muntaqim failed to plead facts sufficient to demonstrate the deprivation of a constitutional right. Accordingly, the circuit court did not err by dismissing Muntaqim's individual-capacity claims on the basis of qualified immunity.

V. *Retaliation*

"An inmate has a viable § 1983 claim where a prison official files a disciplinary charge in retaliation for the inmate's exercise of his constitutional rights," such as filing a grievance. *Sanders v. Hobbs*, 773 F.3d 186, 190 (8th Cir. 2014). But a disciplinary conviction cannot be deemed retaliatory if it was issued for an actual violation of prison rules. *Muntaqim v. Kelley*, 2019 Ark. 240, at 5, 581 S.W.3d 496, 500 (citing *Hartsfield v. Nichols*, 511 F.3d 826, 829 (8th Cir. 2008)). "While a prisoner can state a claim of retaliation by alleging that disciplinary actions were based upon false allegations, no claim can be stated when the alleged retaliation arose from discipline imparted for acts that a prisoner was not entitled to perform." *Id.*, 581 S.W.3d at 500.

A retaliatory-discipline claim fails as a matter of law if the disciplinary decision is supported by "some evidence." *Id.*, 581 S.W.3d at 500. A report from a prison official, even

if disputed by the inmate and supported by no other evidence, legally suffices as some evidence upon which to base a prison disciplinary violation if the violation is found by an impartial decision-maker. *Id.* at 6, 581 S.W.3d at 501. This rule applies even if the report is written by the correctional officer who is alleged to have engaged in the retaliatory conduct. *Hartsfield*, 511 F.3d at 829. Thus, when there is a disciplinary decision affirming the charge, the critical inquiry is whether the disciplinary hearing officer ultimately found that, on the basis of some evidence, the prisoner committed the charged violation. *Muntaqim*, 2019 Ark. 240, at 6, 581 S.W.3d at 501. In reviewing whether the "some evidence" standard has been satisfied, we do not make an independent assessment of the credibility of the witnesses or weigh the evidence because these are issues for the disciplinary hearing officer to determine. *Sanders*, 773 F.3d at 191.

Muntaqim claims that the disciplinary charge for possession of contraband was brought in retaliation for exercising his right to seek redress of his grievances. But the facts alleged in his complaint and the exhibits attached thereto demonstrate that the charge was supported by "some evidence" that he possessed unauthorized property (i.e., contraband)—packages of ramen noodles that field tested positive for methamphetamine—in violation of ADC rules. Goodloe filed a report detailing the incident, and Muntaqim was given a disciplinary hearing at which Minor found him guilty of the charge (and not guilty of another charge). Subsequent drug-analysis testing by the Arkansas State Crime Laboratory that may have produced different results is immaterial to Muntaqim's retaliation claim.

In short, Muntaqim's complaint does not plead sufficient facts to show that Minor (or any of the appellees) was biased and had motive to retaliate against him. Allegations of retaliation that are speculative and conclusory, like Muntaqim's, are always properly dismissed. *Muntaqim*, 2021 Ark. 162, at 8, 628 S.W.3d at 637. Accordingly, we hold that the circuit court did not abuse its discretion in dismissing Muntaqim's retaliation claim.

VI. *Due Process*

Muntaqim claims that appellees violated his due-process rights by failing to adhere to ADC disciplinary policies. Prisoners have a Fourteenth Amendment right to receive due process during prison disciplinary proceedings *only* if they implicate a liberty interest. *Muntaqim*, 2019 Ark. 240, at 4, 581 S.W.3d at 500. Prison policy and procedures do not create a liberty interest to which due process can attach. *Id.*, 581 S.W.3d at 500. Rather, any alleged liberty interest must be an interest in the nature of the prisoner's confinement, not an interest in the procedures by which the State believes it can best determine how a prisoner should be confined. *Id.*, 581 S.W.3d at 500. To maintain an action for deprivation of a right to due process, a prisoner "must show an atypical and substantive deprivation that was a dramatic departure from the basic conditions of his confinement." *Id.* at 5, 581 S.W.3d at 500.

Muntaqim's complaint fails to plead sufficient facts to make this requisite showing. Muntaqim does not claim that the punishment imposed as a result of the disciplinary proceeding was atypical—and for good reason. *See id.*, 581 S.W.3d at 500 (holding no liberty interest in assignment to punitive isolation, good time, class status, or restricted privileges).

14

Instead, he appears to claim that a collateral consequence that resulted from the instant disciplinary violation—a reduction in his VSM incentive program level—constitutes an atypical deprivation because inmates with higher program levels are afforded greater privileges. We disagree.

The facts alleged in the complaint show that Muntaqim was placed in the VSM behavior incentive program for a separate, unrelated disciplinary violation (hitting a prisoner in the face with a closed fist) that occurred more than a year before the instant contraband-possession violation. Moreover, it is well established that a loss of privileges does not compromise a liberty interest. *Munson v. Ark. Dep't of Corr.*, 375 Ark. 549, 552, 294 S.W.3d 409, 411 (2009). Therefore, we hold that the circuit court did not abuse its discretion in dismissing Muntaqim's due-process claims.

### VII. *Equal Protection*

To sustain an equal-protection claim, an inmate must allege that he was a member of a protected class, that similarly situated classes of inmates are treated differently, and that this difference in treatment bears no rational relation to any legitimate penal interest. *Muntaqim*, 2022 Ark. App. 76, at 10, 641 S.W.3d at 44. He also must show purposeful discrimination. *Id.*, 641 S.W.3d at 44. Appellees contend that because Muntaqim makes no specific equal-protection argument on appeal, he has abandoned any argument relating to his equal-protection claims. We agree. *See Benedict v. Ark. Dep't of Hum. Servs.*, 96 Ark. App. 395, 409, 242 S.W.3d 305, 316 (2006) (appellant's failure to discuss a specific argument results in abandonment of that argument on appeal). In any event, we note that the circuit

15

court properly dismissed any equal-protection claims because Muntaqim's complaint fails to state facts demonstrating that he is a member of a protected class and that similarly situated classes of inmates are treated differently.

Because we affirm the circuit court's order of dismissal on the bases of appellees' immunity and Muntaqim's failure to state a claim upon with relief can be granted, we do not address Muntaqim's additional point regarding exhaustion of administrative remedies.

VIII. *Dismissal With or Without Prejudice*

Muntaqim argues that if the dismissal is affirmed, it should be without prejudice instead of with prejudice. Appellees contend that this argument is not preserved because Muntaqim did not raise it in the circuit court. We agree that the dismissal in this case should be without prejudice, and we are not persuaded by appellees' preservation argument. When a complaint is dismissed under Rule 12(b)(6) for failure to state facts upon which relief can be granted, the dismissal should be without prejudice. *Duggar v. City of Springdale*, 2020 Ark. App. 220, at 18, 599 S.W.3d 672, 686. This allows the plaintiff to then elect whether to plead further or appeal. *Id.*, 599 S.W.3d at 686. While Muntaqim elected to appeal the dismissal, he was not afforded the opportunity to plead his claims further because the circuit court dismissed his complaint with prejudice. Under similar circumstances, we have modified a circuit court's dismissal with prejudice to one without prejudice. *Id.* at 19, 599 S.W.3d at 686; *see also Malone v. Trans-States Lines, Inc.*, 325 Ark. 383, 926 S.W.2d 659 (1996) (modifying dismissal with prejudice to dismissal without prejudice). We take the same course

of action here. Accordingly, the circuit court's order is modified to reflect that the dismissal is without prejudice.

Affirmed as modified.

BARRETT and HIXSON, JJ., agree.

*Malik Muntaqim*, pro se appellant.

*Leslie Rutledge*, Att'y Gen., by: *Matthew M. Ford*, Ass't Att'y Gen., for appellee.